# North Pennsylvania Railroad Company *versus* Davis & Leeds.

The decision of the Court of Common Pleas, on an exception to a report of viewers for the improper interference of a party with the jury, is the exercise of a discretion, which, like the granting or refusing of a new trial, will not be reviewed in this court.

Tenants for years are such *owners* as come within the purview of the Acts of Assembly, authorizing the court to appoint viewers, to award compensation for land taken for the purposes of a railroad.

In such case, the interest which the tenants hold, under a covenant for the renewal of the lease, is a proper subject of compensation.

Nor will the fact that the viewers in their report designated it as "damages for the non-renewal of the lease," vitiate the award, it being in substance compensation for the land, and not damages for the breach of contract.

This court having no means of ascertaining whether the assessment in those cases is reasonable in amount, do not undertake to decide upon the question.

CERTIORARI to the Common Pleas of *Philadelphia*.

This was a proceeding under the charter of the North Pennsylvania Railroad Company, and the 11th section of the Act of 19th February, 1849, entitled "An act regulating railroad companies" to assess damages sustained by James Davis and Nathan Leeds, by reason of the railroad company having appropriated for a depot certain property held by Davis & Leeds under a lease from Charles W. Warnick and Frederick Leibrandt.

The petition for the appointment of viewers was presented by the railroad company. The case showed that Davis & Leeds were in possession of the ground under a lease from the owners for two years from the first of April, 1852, at an annual rent of $600 per annum, with a covenant on the part of the lessors to renew the lease for three years at $800 per annum. The railroad company purchased the reversion from Warnick & Leibrandt, and entered upon the premises in the summer of 1853.

The reviewers were appointed on the 6th of May, 1854, and on the 7th of July following, reported $4000 in favour of Davis &

[North Pennsylvania Railroad Company v. Davis.]

Leeds, "for damages, including the damages for non-renewal of the lease."

To this award the railroad company filed exceptions, the substance of which was, that after the case was closed, James Davis, one of the claimants, held conversations with some of the viewers in relation to the damages, and communicated with one of them on the same subject by letter.

Testimony was taken by both parties on the subject of the exceptions, and on the 25th November, 1854, after argument, the court below dismissed the exceptions and confirmed the report of the viewers.

The railroad company removed the cause to this court and assigned the dismissal of the exceptions for error, and also that the Court of Common Pleas had no jurisdiction, and the viewers had no authority or jurisdiction to award damages for a breach of contract in the refusal to renew the lease.

*J. P. Brock*, for appellant.

1. The court should have set aside the report for the interference of the complainant after the case was closed: Pennsylvania Railroad Company *v.* Kieffer, 10 *Harris* 359; Ritchie *v.* Holbrook, 7 *Ser. & R.* 458; Chester Valley Railroad, 9 *Harris* 105; *Chitty's Gen. Pr.*, vol. 3, p. 800; Vicary *v.* Farthing, *Cro. El.* 411; King *v.* Joliffe, 4 *T. R.* 289; King *v.* Martha Gray, 1 *Burr.* 499; Spring Garden Street, 4 *R.* 194.

2. The Common Pleas had no jurisdiction. The Act of Assembly applies only to a case between a company and the *owner of the land*. Davis & Leeds were merely occupants.

3. The viewers could not award and report damages for the non-renewal of the lease—they are collateral and consequential. After the expiration of the lease, Davis & Leeds had no interest in the *land* but only in the *contract:* Overdeer *v.* Lewis, 1 *W. & Ser.* 90; Reitenbaugh *v.* Chester Valley Railroad, 9 *Harris* 105; Henry *v.* Bridge Co., 8 *W. & Ser.* 85; Monongahela Navigation Co. *v.* Coons, 6 *W. & Ser.* 101; Schuylkill Navigation Company *v.* Thoburn, 7 *Ser. & R.* 421; Mifflin *v.* Railroad Co., 4 *Harris* 195; Philadelphia and Trenton Railroad Co., 6 *Wh.* 25; Monongahela Navigation Co. *v.* Coon, 6 *Barr* 382; *Batten on Sp. Per.* 248.

*T. S. Smith*, for appellees.

If the court will not regard the depositions as part of the record in this case, then there is an end of the case. The Act of 19th February, 1849, provides that if damages be awarded, and the report shall be confirmed by the court, judgment shall be entered thereon. The confirmation disposes of all irregularities: Ply-

[North Pennsylvania Railroad Company v. Davis.]

mouth Road, 5 *R.* 150; Spring Garden Street, 4 *R.* 192; Schuylkill Falls Road, 2 *Binn.* 250; Concord Road, 4 *Yeates* 372; Trenton Railroad, 6 *Wh.* 25; Sands *v.* Rolshouse, 3 *B.* 456; Dodds *v.* Dodds, 9 *B.* 315; Moyer *v.* Germantown Railroad Co., 3 *W. & Ser.* 91; Harker *v.* Elliott, 7 *Ser. & R.* 284; Brown *v.* School Directors, 6 *Harris* 78; Ohio & Pennsylvania Railroad *v.* Bradford, 7 *Harris* 363.

2. The interests of the tenants came within the act: Railroad *v.* Boyer, 1 *Harris* 497; Turnpike *v.* Brosi, 10 *Harris* 29; Plankroad Co. *v.* Thomas, 8 *Harris* 91.

3. The questions of jurisdiction and authority to assess the damages were not raised in the court below, and it is too late to make them for the first time here: Road in Moore Township, 5 *Harris* 116; Lower Merion Road, 6 *Harris* 238; Morton *v.* Funk, 6 *B.* 483; Legaux *v.* Wells, 4 *Yeates* 43; Wollenweber *v.* Ketterlinus, 5 *Harris* 389, &c.

The opinion of the court was delivered by

WOODWARD, J.—1. The first error is founded on matters which are not assignable for error. Beyond all question, the conduct of one of the defendants in interfering with the deliberations of the jury, if it was what is alleged, was impertinent and improper in the last degree; but it was for the Court of Common Pleas, under whose precept the viewers acted, to protect them from that kind of intrusion; and we are bound to presume that if the court had been satisfied of any improper interference, they would have set aside the report and appoint a new view. They refused to do so, and we cannot revise their discretion because we have not the evidence on record which guided it. As well might we be expected to reverse a court for not granting a new trial. All such applications are appeals to the discretion and conscience of the court in which they originate, founded on explanations and evidence which do not come upon the record; and the appellate tribunal, therefore, cannot judge the soundness of the discretion exercised. In such circumstances the legal presumption attaches that all things were properly done, and an assignment of error like this is thus conclusively answered.

2. The second error is that the Court of Common Pleas had no jurisdiction of the case, which is a remarkable assignment by the party who invoked the jurisdiction, and never excepted to it whilst the record remained in the court.

But there is no ground for such an allegation, here or there. The Act of Assembly authorized the company to apply to the court to assess compensation for "*lands or materials*," when they could not agree with the owners. The defendants had an estate for years in the lot in question, with a covenant for a renewal of the term at an increased rent. This was an interest in land, and the

company, wanting and determining to take it, were not mistaken in supposing that under the Act of Assembly the court had jurisdiction of the subject-matter. If we should hold that such an interest was not included in that most comprehensive word "*lands*," the company had no authority to take it, and they were trespassers *ab initio*. Their right, and the jurisdiction of the court, are correlatives which result out of the same statute and the same words.

3. The third and last error assigned is that the viewers had no authority or jurisdiction to award damages for a breach of contract in the refusal of the said railroad company to extend the lease in said award mentioned.

The language of the report is, " $4000 damages, which *includes the damages arising out of the refusal of the said railroad company to extend the lease.*"

Undoubtedly damages for breach of covenant could not be assessed in this proceeding, for they can only be given for *lands* or *materials*. But though called damages in this instance, were they in substance and fact anything more than compensation for that interest which the defendants held in land, and which the company took away and appropriated to their own use?

The defendants were in possession of the lot under a lease from Warnick & Leibrandt for two years from the first day of April, 1852, at a rent of $600 per annum, with a covenant on the part of the lessors to renew the lease for three years, at $800 per annum, upon the expiration of the two years, if requested, and were using the lot as a lumber yard with nine or ten months of the first term in the lease before them unexpired.

The company purchased the reversion of the lessors, and then in virtue of their grant of eminent domain appropriated the lot to their own use. They thus extinguished the estate of the lessees—both their actual interest under the two years' term in the lease, and their possible interest under the covenant of renewal. They took all the lessees had in that land. Ought they not to pay for all? A renewal of the lease agreeably to the covenant was out of the question. Although the company had succeeded to the rights and powers of the landlords, yet they wanted the lot for a depot, and this was incompatible with a renewal of the lease for the purposes of the defendants. The direct injury done to them—or in other words, the value of the thing taken from them, was to be measured by the worth of the lot, at the stipulated rents, for the residue of the term of two years, and for the whole of the term of three years. No assessment of damages or compensation would have been just and adequate that did not embrace both these terms, for the true measure of the interest the lessees had in the land was the joint or aggregate value of the two terms. This the viewers meant to give, and did give. Of what importance is it then that they characterized their assessment as damages arising

[North Pennsylvania Railroad Company *v.* Davis.]

out of the refusal of the company to extend the lease? In some sense the damages did so arise, though I agree the phrase selected to show that they had valued the three years' term, was not well chosen. The fact might have been better expressed in other language, but we are to look at the substantial fact—the thing done and done properly—and the language is to be construed as describing that and no more. We cannot permit ourselves to be misled by calling it a "breach of contract" for which the damages were assessed. It was no more a breach of contract than if the company had absorbed the estate of the tenants without first purchasing the reversion of the landlords. In that case the act of the company would have rendered a renewal of the lease impossible, but they would have paid, not for a breach of contract, but for an interest in lands. They did so here. The defendants held that interest, as all citizens hold real estate, subject to appropriation for public use, but their right of compensation was coextensive with their interest, and the company having taken the whole of it, the inquest did no more than assess the value of the whole.

Whether the assessment was reasonable in point of amount, is a question which we have no means of deciding, and which we do not touch.

The decree of the court is affirmed.