## Buettner, trading, etc., v. City of Washington, Penna.

*Eminent domain—Widening of street—Landlord and tenant—Tenant's damages—Dedication by landlord.*

1. Where a landlord dedicates land to a city for a street, the tenant of the land is not affected by such dedication.

2. If the city enters upon the land after the dedication, the tenant may waive his right to sue the city *ex delicto* and petition for an assessment of damages by viewers.

3. Where a city enacts an ordinance for widening a street, the carrying of the ordinance into execution operates as an exercise of the power of eminent domain as to any owners, whatever their estate may be.

Petition to set aside appointment of viewers. C. P. Washington Co., May T., 1926, No. 52.

Before Brownson, P. J., and Cummins, J.

*Witherspoon & Devore,* for plaintiff.

*A. G. Braden,* City Solicitor, for defendant.

BROWNSON, P. J.—Attention is called in the defendant's brief to the fact (although this fact is not set up in the motion as a ground thereof) that the notice prescribed in section 1 of Court Rule 31 was not given prior to the presentation of the petition for the appointment of viewers. The purpose of such notice evidently is to afford the defendant an opportunity to be heard upon the preliminary question, whether the petitioner has a case *prima facie* warranting the granting of a view to assess damages. In this instance, the

city has now been afforded an opportunity so to be heard before the viewers have acted, and the purposes of the rule have thus been substantially met, notwithstanding the failure to comply with it.

This rule to set aside the appointment of viewers has been heard upon the pleadings. From them the following facts appear, which, at least for present purposes, are all undisputed, to wit:

1. That, on April 25, 1923, Frank D. Price was, and he still continued to be on April 15, 1925, the owner in fee simple of a lot of ground abutting on the east side of Shaffer Alley and extending from Beau Street to Cherry Avenue, which is mentioned in the petition of W. J. Buettner for the appointment of viewers.

2. That, on April 25, 1923, Price leased to Buettner, in writing, the building fronting on Beau Street, erected upon said lot, for a term of fourteen months from May 1, 1923, with "the right of three additional years" after the expiration of said term, provided written notice of election to exercise this privilege should be given to lessor sixty days prior to June 30, 1924, in which case the lease should be binding during three additional years.

3. That, on April 2, 1924, Buettner gave to Price written notice of an election to extend the lease for three years from June 30, 1924, and Price acknowledged in writing the receipt of such notice; whereby Buettner became invested with a leasehold estate in said property, to expire June 30, 1927, of which he was the owner on April 15, 1925.

4. That, on or about April 15, 1925, owners of lots abutting on Shaffer Alley between Beau Street and Cherry Avenue (including Frank D. Price) executed an agreement with the City of Washington, whereby they agreed to dedicate, and did dedicate, certain portions of their respective lots for the widening of Shaffer Alley (or avenue) to forty feet, and released the city from all damages for the widening, opening, etc., thereof, "except such damages as may be caused to the buildings on the lots of Frank D. Price" and certain other lots; the city, at its expense, to "rebuild the western walls, and so much of the sides as may be destroyed, of the brick building constructed on the property of Frank D. Price," and to do certain things on certain other properties.

5. That, by an ordinance enacted April 15, 1925, the city accepted and authorized the signing on its behalf of the agreement mentioned in paragraph 4, and further ordained, inter alia, "that Shaffer Alley, between East Cherry Avenue and East Beau Street, be and the same is hereby opened and widened as a public street of the city of the width of forty feet, to be known as Shaffer Avenue, in accordance with the foregoing agreement," and directed the city clerk "to advertise for bids for tearing down and rebuilding the western walls of the brick buildings on the property of Frank D. Price," and also certain other work.

6. That, between April 15, 1925, and Jan. 1, 1926, the city entered upon the premises held as aforesaid under lease by Buettner, took possession for the widening of Shaffer Avenue of a part of the premises, and removed about three feet of the building occupied by him; and that he and the city are unable to agree upon the matter of damages.

The only reason assigned as the ground of the motion to quash the order to viewers is that the city "did not enter upon the property described in the petition by authority of its right of eminent domain, but by virtue and authority of a written agreement entered into between the defendant and Frank D. Price, plaintiff's lessor, and others (the agreement summarized in paragraph 4, above)."

It is clear that, as to Frank D. Price, the owner of the fee, the city did not enter by authority of its right of eminent domain, but in pursuance of a dedication made by him. But while Price could dedicate his own estate in the land to be taken for the widening, he could not dedicate the estate of his lessee, Buettner. Price could, and did, so far as he himself was concerned, give to the city authority to enter and take that land, but he had no power of his own to confer upon it authority to invade the possession of Buettner and to take from the latter a part of the leasehold estate of which he was in possession: Brown v. Powell, 25 Pa. 229; and there is no averment that he ever delegated such power to Price. The only authority which the city appears to have had to take out of Buettner's possession, as it did, and appropriate to public use for street purposes a portion of the leasehold, was in the power of eminent domain vested in it. When the city enacted the ordinance above recited, whereby it ordained that Shaffer Avenue should be opened and widened as a public street of the width of forty feet, the carrying of this into execution would prima facie operate, and should be regarded as operating, as an exercise of the power of eminent domain as to any owners, whatever their estates might be, of any ground to be occupied by the avenue as widened who might not have made a dedication. It is not to be assumed that the city intended to commit an unlawful trespass. There being no claim advanced that Buettner ever dedicated any part of his leasehold or ever gave to the city any authority to take any part of it, we must, for present purposes, assume that he did not do so. And if he did not, he is prima facie entitled to ask for damages. Not only is he an "owner" within the meaning of the Constitution and general laws relating to compensation for the taking of private property for public use or injuring the same by the construction of works for public use, A. & P. Turnpike Road v. Brosi, 22 Pa. 29; Pennsylvania R. R. Co. v. Davis, 26 Pa. 238, but it was explicitly provided by the Act of May 28, 1913, P. L. 368 (since supplied as to boroughs and townships by code provisions), that "tenants of lands, property or materials abutting on, or through which pass roads, streets, lanes or alleys, injured by the laying out, opening, widening [etc.] of said roads, streets, lanes or alleys, or the changing of grades or lines thereof," shall have the right to damages against the cities, etc., doing this, to be assessed by viewers. The petition in this instance states a case appearing to come within this act and section 1 of article XIV of the City Code of June 27, 1913, P. L. 568, and no facts have been presented which show that Buettner is not entitled to prosecute it.

It is contended in the brief that a city of the third class can appropriate property under the right of eminent domain only under an ordinance passed in conformity with article V of the Act of June 27, 1913, P. L. 568, and that, if it enters without a compliance with prescribed formalities, the remedy would be an action of trespass to recover damages ex delicto. But, in the first place, no fact is alleged or appears on this record which is inconsistent with the supposition that the ordinance was, in this instance, regularly enacted and published, and as the city has actually taken possession of this ground and constructed a street upon it, the presumption ought to be, until the contrary appears, that its act was not unlawful and a tort, by reason of irregularity in the enactment of the ordinance; and, secondly, even if the entry be made without the observance of all the forms of law, the owner may waive irregularities and his right to sue in trespass, and may proceed for compensation by a view: Oliver v. Railway Co., 131 Pa. 408, 414. In the case of a highway, it was laid down in Brown v. Powell, 25 Pa. 229, that, where the entry was made under authority granted by the landlord (the lease antedating such grant, as is the case here), the tenant might waive any right to

sue *ex delicto* and petition for an assessment of damages by viewers. That is exactly the case now before the court. The city entered after receiving a dedication and a release of damages from the landlord, but without any release from the tenant. We think the tenant can properly have his damages assessed in these proceedings.

And now, May 3, 1926, the rule to set aside the appointment of viewers is discharged.

From Harry D. Hamilton, Washington, Pa.