In the Matter of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property Required for BRONX RIVER EXPRESSWAY and Other Improvements, in the Borough of The Bronx. LION BREWERY OF NEW YORK CITY, Appellant; BANNER OIL COMPANY, Respondent.

*Per Curiam.* The fee owner lessor appeals from a final decree in condemnation. The decree apportioned $42,000 of the award to the lessee.

This is the second appeal, taken after a second trial.

This court previously held, upon the appeal from the first trial (*Matter of City of New York* [*Bronx Riv. Expressway*], 278 App. Div. 813), that Special Term applied an erroneous measure of damage. We said then (278 App. Div. 814):

" The fair market value of the leasehold must be determined. Such value is measured by the excess of rental value over rent reserved. All the provisions of the lease, including those governing the right of cancellation, must be given due consideration in determining the rental value of the leasehold, but the mere existence of an unexercised option for cancellation upon payment of a fixed sum would not authorize an award of damages to a lessee based on the cost of cancellation, unless a rental value in excess of rent reserved is shown. Of course, the cancellation clause might affect marketability, and the right of the landlord to have the rent adjusted would have to be considered in determining the rent reserved and in ascertaining whether the lessee suffered a loss.

" Both sides offered expert opinion evidence on the question of the value of the lease. The lessee's expert fixed the value at a figure higher than the total award for the property. The lessor's expert said that it had no value. The theory of the lessee's expert was that the rental value could be ascertained by estimating the profit on the sale of gasoline and adding thereto the return from subleases. Assuming that this would afford some indication of rental value or of the market value of the leasehold, we find that in computing the rent to be paid, this expert omitted any allowance for the adjustment of rent by the arbitrators up to the rental value or the alternative of paying a rent of 7% of the gross receipts.

" Under the circumstances, the final decree, so far as appealed from, should be reversed and the case should be remitted to Special Term for a new trial on the issue of damages."

The lease provided a graduated minimum rent. It contained an option, exercisable by the lessor, to demand an adjusted rent to be fixed by arbitration. The lease required the arbitrators to ascertain and fix the net rental value of the premises as rent. Arbitration, pursuant to this provision, was about to commence when title vested in the city.

The lessee had an option too. Instead of paying the rent fixed by arbitration it was entitled to pay in the alternative as rent 7% of its gross receipts.

At the trial following the first appeal, no evidence was introduced as to the gross receipts upon which the alternative rental could be computed. Thus, the lessee failed to demonstrate that despite arbitration fixing the rent at a figure equivalent to the rental value of the premises, it could reduce its liability by paying a lower rent based upon a percentage of its gross receipts. Absent such showing, there was no basis for the trial court's finding that during the portion of the term subject to the arbitration provision of the lease the leasehold had value.

Special Term found that 7% of the fee value of the property, as fixed in the proceeding, represented fair rental value. There is no evidence in the record to support the finding. Moreover, whatever the rental value might be, it would presumably become the reserved rent when the arbitrators performed their duty.

There were four months of the term remaining upon the date title vested in the city during which a minimum annual reserved rent of $3,300 was still in force. The lessor's expert, McCann, testified that the difference between annual net rental value and the reserved rent of $3,300 was $6,700.

Although the tenant invested a large sum in altering the building this was apparently intended to be compensated for by the low minimum fixed rent for the first seven years.

The lessee's expert apparently conceived his client's claim to be one for the loss of the business while giving lip service to the fixing of the rental value as against the reserved rent.

Accordingly, the decree should be modified by reducing claimant-respondent's award to the sum of $2,233, without costs.

DORE, J. (dissenting). On the prior appeal, the fee owner, as appellant, chiefly contended that the net rental value and the rent reserved were made synonymous by the terms of the lease requiring periodic arbitrations to fix the rent; and that, therefore, the interest of the lessee in any award was necessarily nil. If we intended to sustain that legal contention of the fee owner on the first appeal, we would have reversed on the law, and dismissed the lessee's claim. But we did not do that; in directing a new trial, we overruled the fee owner's main legal contention.

On the new trial neither side offered any additional evidence. The learned trial court, however, following the prior directions of this court, abandoned the formula which we considered erroneous and made his decision based on the fair market value of the leasehold taking into consideration all the factors we directed should be considered; and on the basis of all the evidence, on his view of the property and his wide experience in property valuation including numerous parcels in the area in question, fixed the damage value to the lessee. There was sufficient evidence on the basis of which the trial court could and did properly determine a rental value in excess of the rent reserved.

On the merits and in fairness and justice, the owner should not be allowed to seize for itself the entire award. The fee owner leased to this lessee an antiquated ice house; the lessee by the expenditure of nearly $40,000 transformed this worthless ice house into a modern first-class super-service gasoline station; for these improvements *created by the lessee* the fee owner has now received $110,000 and an additional $67,000 for the land making a total of $177,000. When it received $110,000 for the improvement, the owner received the full benefit of all the money, labor and skill expended solely by the lessee. But it is not satisfied; it seeks to deprive the lessee of *any* part of the award.

I dissent and vote to affirm the supplemental and amended final decree with interest to the lessee from the date of vesting of title in the city to the date of payment, with costs to the lessee, claimant-respondent.

Peck, P. J., Callahan, Breitel and Bastow, JJ., concur in *Per Curiam* opinion; Dore, J., dissents and votes to affirm in opinion.

Decree modified in accordance with the opinion herein, without costs. Settle order on notice.