VIRGIN ISLANDS HOUSING AND URBAN RENEWAL
AUTHORITY, Plaintiff

v.

19.0976 ACRES OF LAND IN ST. THOMAS, VIRGIN ISLANDS,
MARIA ELMIRA LOCKHART, ALFRED H. LOCKHART,
DOROTHY LOCKHART ELSKOE, RAYMOND S. LOCKHART,
et al., Defendants

Civil No. 110 - 1958

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

January 12, 1959

*See, also, 169 F. Supp. 33 (same opinion),
also p. 16, this volume*

LEON P. MILLER, ESQ., United States Attorney, Charlotte Amalie, Virgin Islands, *for the plaintiff*

JAMES A. BOUGH, ESQ., Charlotte Amalie, Virgin Islands, *for the defendants*

MARIS, *Circuit Judge*

This is a proceeding by the Virgin Islands Housing and Urban Renewal Authority to take by eminent domain 19.0976 acres of land in Estate Thomas, New Quarter, Island of St. Thomas, for the purpose of constructing thereon a public housing project. The land sought to be taken is a part of a tract of 152 acres of land belonging to the defendants designated as Parcel 6E of Estate Thomas. The land in controversy is comparatively level and it and most of the defendants' remaining land is now being used as grazing land. A riding stable is maintained thereon and cattle, sheep, goats and pigs are raised for slaughtering. The land contains two wells, a one-story wooden building which has been operated as a night club, a cistern, four small houses, a small kitchen, two stables, a pig pen, a sheep pen and two small poultry houses. In a judgment entered October 14, 1958, I determined that the plaintiff was entitled to take and hold the property for the use intended upon payment of just compensation therefor. 3 V.I. 384. To determine the amount of com-

5

pensation to be awarded the defendants, I appointed three commissioners who viewed the land and received the evidence offered by the parties. The commissioners have filed their report finding the fair market value of the property to be as follows:

| | | |
|---|---|---|
| 1. | 19.0976 acres of land at $4,800 per acre | $91,668.00 |
| 2. | Small well, good condition | 2,500.00 |
| 3. | Large well, good condition | 3,500.00 |
| 4. | Horse stable, wood, poor condition | 200.00 |
| 5. | Small house, one room, wood, poor condition | 200.00 |
| 6. | Larger house and tank, wood, fair condition | 550.00 |
| 7. | Shed, 2 doors, wood, poor condition | 250.00 |
| 8. | Stable, three stalls, wood, poor condition | 200.00 |
| 9. | Small house, one room, wood, poor condition | 150.00 |
| 10. | Club house, 5 rooms, fair condition, 28' x 98', wood, with concrete floors | 6,250.00 |
| 11. | Cistern, concrete construction, 14,600 gallons | 2,250.00 |
| 12. | Severance damages for loss of club business | 2,000.00 |
| 13. | Severance damages on 50 acres eastern land at $190.00 | 9,500.00 |
| | Total | $119,218.00 |

The plaintiff has filed objections to the commissioners' findings and report. It urges that the commissioners' valuation of the 19.0976 acres of land involved is excessive and not in accord with the pertinent legal principles in that the values of the land and improvements thereon have been found separately and added together, that the valuations of items 4, 5, 6, 7, 8 and 9 are excessive and unrealistic, that the valuation of item 10 is grossly excessive, that the award of severance damages under item 12 is erroneous and unjustified and that there is no legal basis for the award of severance damages under item 13. The objections have been fully argued and I have carefully examined the evidence taken by the commissioners in the light of those objections and have myself viewed the land. My conclusion is that the objections must be

6

sustained and the report of the commissioners must be set aside.

Section 3 of the Revised Organic Act of the Virgin Islands (1954; prec. 1 V.I.C.) provides that private property shall not be taken for public use except upon payment of just compensation ascertained in the manner provided by law. Sections 418 and 419 of Title 28 of the Virgin Islands Code provide the procedure and rules to be followed in the determination of just compensation. So far as pertinent here section 419 provides:

"The following rules shall be followed in the determination and assessment of just compensation:

"(1) The value of the property sought to be appropriated and all improvements thereon, pertaining to the realty and each and every separate estate and interest therein shall be assessed . . .

"(2) If the property sought to be appropriated constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff, shall be assessed.

. . ."

█ In United States v. Petty Motor Co., 1946, 327 U.S. 372, 377, 66 S. Ct. 596, 599, 90 L. Ed. 729, the Supreme Court said: "The Constitution and the statutes do not define the meaning of just compensation. But it has come to be recognized that just compensation is the value of the interest taken. This is not the value to the owner for his particular purposes or to the condemnor for some special use but a so-called 'market value.' It is recognized that an owner often receives less than the value of the property to him but experience has shown that the rule is reasonably satisfactory."

██ The market value of the property which is to be determined does not depend upon the uses to which the owner has devoted it but is to be arrived at after considering all the uses to which it is suitable. The highest

and most profitable use to which the property can probably be put in the near future is to be given weight to the full extent that the prospect of demand for such use affects its market value. Olsen v. United States, 1934, 292 U.S. 246, 255, 54 S. Ct. 704, 78 L. Ed. 1236; McCandless v. United States, 1936, 298 U.S. 342, 345, 56 S. Ct. 764; 80 L. Ed. 1205. And since it is the market value of the entire property taken which is to be determined, it is improper to value buildings separately from the land because their value is necessarily affected by the value of the land, its location and surroundings and the uses to which it can be put. Devou v. City of Cincinnati, 6 Cir. 1908, 162 Fed. 633, cert. den. 212 U.S. 577, 29 S. Ct. 685, 53 L. Ed. 658; Morton Butler Timber Co. v. United States, 6 Cir. 1937, 91 F.2d 884; United States v. Meyer, 7 Cir. 1940, 113 F.2d 387, cert. den. 311 U.S. 706, 61 S. Ct. 174, 85 L. Ed. 459; Fain v. United States, 6 Cir. 1944, 145 F.2d 956; United States v. Certain Parcels of Land, 5 Cir. 1945, 149 F.2d 81; Kinter v. United States, 3 Cir. 1946, 156 F.2d 5, 172 A.L.R. 232; United States v. Jaramillo, 10 Cir. 1951, 190 F.2d 300; United States v. Cunningham, 4 Cir. 1957, 246 F.2d 330.

■ In the present case, as we have seen, the commissioners valued the land and improvements separately and gave as their valuation the aggregate of all of them, plus two items of severance damages. This was not in accord with the method of valuation required by the rule of law to which I have referred. It may be that the commissioners misconstrued in this connection the language of section 419(1) of Title 28, V.I.C. That subsection requires the valuation of "the property sought to be appropriated and all improvements thereon." This, however, does not mean that the land and the improvements thereon are to be valued separately and independently of each other and the results added together but merely that effect of each

is to be considered upon the market value of the whole, which is what the commissioners are to determine. The report must, therefore, be set aside insofar as it finds an aggregate value of $107,718 for the land, buildings and wells.

■ The report must also be set aside so far as items 12 and 13, awarding severance damages, are concerned. Item 12 awards severance damages for loss of club business in the sum of $2,000.00. It is settled, however, that the owners of property taken by eminent domain are not entitled to an allowance for loss of prospective profits from a business which they are conducting on the land taken. Mitchell v. United States, 1925, 267 U.S. 341, 45 S. Ct. 293, 69 L. Ed. 644.

■ ■ Item 13 awards severance damages of $9,500 to 50 acres of the defendants' remaining land. This is hillside land which overlooks the lower flat land here sought to be taken. The allowance which amounts to $190 per acre appears to have been based upon the theory that the value of this higher land for homesites will be impaired by the fact that it will overlook a public housing development. The only basis in the record for such a finding is an opinion to that effect expressed by one of the defendants' witnesses. But there was no factual evidence to support such a conclusion on his part and I think it was erroneous for the commissioners to adopt it. Certainly it can be argued with equal force that the remaining land will be benefited by the presence within view of a well designed and attractive group of housing units instead of the much more nondescript structures which meet the eye from many hillside locations in St. Thomas. I can discover in the record no adequate evidence to support a finding that the defendants' remaining land will be damaged by the taking.

■ Since the report must be set aside in its entirety it becomes my duty to make an independent valuation of

9

my own from the evidence. Rule 53(e)(2), Federal Rules of Civil Procedure, 28 U.S.C.; United States v. Bobinski, 2 Cir. 1957, 244 F.2d 299, 302; United States v. Twin City Power Company of Georgia, 5 Cir. 1958, 253 F.2d 197.

██ ██ It is clear from the evidence that by far the most profitable use to which the property sought to be taken can be put is for subdivision into building sites for the construction of dwelling houses. The location of the land immediately adjacent to the limits of the town of Charlotte Amalie makes it particularly appropriate for such use. This, of course, is the use to which the plaintiff plans to devote it. The use to which the property is now being put, namely, the grazing and stabling of livestock and the operation of a small night club, is clearly a less profitable use and I, therefore, give it little weight. By the same token the value of the buildings and wells to their present owners for their present use becomes of little significance. The only element of value with respect to the buildings and wells to be given much weight is their value, if any, to a purchaser acquiring the land for the purpose of building homes thereon, and which would, therefore, be reflected in the market value of the land for that purpose. From the evidence I find that this element of value approximates $11,000.

██ ██ The evidence as to the market value of the land for building subdivision purposes is conflicting. The plaintiff's valuation witnesses place it at from $3,000 to $3,500 per acre and the defendants' valuation witness at $5,000 per acre. The $5,000 figure must be rejected as too high. It was based upon the prices realized at recent sales of hillside homesites having a panoramic view, which the witness admitted were more valuable than sites on level land in St. Thomas. The testimony of the plaintiff's witnesses, on the other hand, was based upon sales of acreage and lots in the close vicinity of the land in question, which when all proper adjustments for the cost of subdivision,

the opening of streets, etc., are made appear to support a figure of approximately $3,500 per acre. From all the evidence and after viewing the land I find that the element of market value contributed by the land alone approximates $3,750 per acre.

I accordingly find that the fair market value of the land sought to be taken including all the buildings, structures and wells thereon is $82,500 and this amount will be awarded to the defendants as just compensation for the property to be taken.

An appropriate final judgment will be entered.