534

In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Relative to Acquiring Title to Real Property Required for Park Row Slum Clearance Project Within the Area Bounded by Park Row and Other Streets, in the Borough of Manhattan. MARGUERITE H. WALSH et al., Respondents; JOSEPH RAGONE et al., Respondents-Appellants; ROBERT KOMMEL, INC., et al., Appellants.

First Department, January 22, 1963.

*Myron Kommel* of counsel (*Theodore J. Zimmerman* with him on the brief; *Romano & Schenker,* attorneys), for Kommel, Inc., appellant.

*Milton H. Harris* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellant-respondent.

*Francis X. Walsh* for Marguerite H. Walsh and others, respondents.

*George Bergen* of counsel (*Morris Eder* and *Harold L. Leddy* with him on the brief; *Skinner & Bermant, Leddy & Raber,* attorneys), for Jean Duboff, respondent.

*David Silberman* of counsel (*Samuel H. Grant* with him on the brief; *Silberman & Grant,* attorneys), for Chinatown Garage-Park Row Corp., respondent.

*Salvatore Viscardi* of counsel (*Merritt T. Viscardi* with him on the brief; *Viscardi & Viscardi,* attorneys), for Joseph Ragone and others, respondents-appellants.

*Anthony Romano* of counsel (*Paul G. Schenker* with him on the brief; *Romano & Schenker,* attorneys), for Joseph Bellamy and others, respondents-appellants.

*Per Curiam.* At issue here are appeals and cross appeals from awards in condemnation as to five parcels used in whole or in part as parking lots, (Damage Parcels [hereinafter " D. P."] 17–18, 39, 53–54, 56 and 57) and two building awards (D. P. 40 and 60).

The decree involved is the third partial and final decree of the Supreme Court, New York County, dated November 1, 1960, incident to a " Title 1 " proceeding for the acquisition of a substandard area that has since been redeveloped into a middle-income housing co-operative. Title vested on May 29, 1958, and values were determined in the decree as of that date. The appeals and cross appeals are disposed of as follows: The five final awards relating to parcels used in whole or in part for parking lot purposes are modified to the extent of reversing the land awards as to these five parcels and remanding them to Special Term for retrial; the final award for D. P. 40 is modified to the extent of increasing the land award, and the final award for D. P. 60 is modified to the extent of reversing the award for the

building and remanding it to Special Term for retrial as to the building award, and the awards are otherwise affirmed as hereinafter indicated.

### D. P. 17–18, 39, 53–54, 46 and 57

Three of these parcels are used exclusively for parking lot purposes. D. P. 17 and 54 are each improved with a five-story tenement, the rear of which is used for parking in conjunction with parcels Nos. 18 and 53, respectively. The city appeals from the land awards made for those parcels. Claimants cross-appeal with respect to the awards for D. P. 39 and 57 for the reason that they are inconsistent and irreconcilable, and because Special Term did not make known its basis for making these awards. They request a retrial in accordance with a formula fixed by this court for evaluation of land used as parking lots, or, in the alternative, a sharp increase in the base land awards as to these parcels.

In the tentative decree, Special Term fixed a base land compensation for each parcel and then made an additional award for parking lot parcels in the form of an increment for parking lot use at the rate of $1 per square foot. The city's objection to this increment was thereafter sustained. However, in the final decree Special Term fixed a new over-all land compensation which approximated or exceeded the total in the tentative decree and, in each instance, exceeded the base land compensation fixed in the tentative decree, and gave no supporting reason for the increase. Absent any given or apparent reason for this increase, we must conclude that the sums over and above the base land awards were allowed for parking lot use. There is no objection to the base land awards where they conform with land values in the neighborhood. There is an issue, however, as to whether an additional award should be made because of the special use of these parcels for parking lot purposes.

This issue was found disturbing by Special Term: what is the proper method of appraisal for determining the value of real estate used as a parking lot? The method referred to is not to be formulated by means of a judicial proceeding (*Matter of City of New York [Maxwell]*, 15 A D 2d 153). By reverting to first principles, one finds a reliable answer. Urban real estate — particularly in metropolitan centers — derives its value from its potentiality as sites for buildings. While the land aside from the building produces no income and, hence, as a business investment would have no value, yet it is a necessary condition to the existence of the building. It is from the combination of land and building that income is produced and commercial real estate

derives its value. Because it has the potentiality of providing a building site, and there is a market for land as such, vacant land is not valueless. Also, land may be improved without structures, or at least with minimal structures, and still have a commercial use as, for instance, storage yards, playing fields, parking lots, or the like. Compared with the incidence of land used as building sites, the latter are few and their use as such is transient. Therefore, their sales potentiality is dominated by the sales price of the neighboring sites.

However, there is a distinction between land in its natural state and a plot improved even only to the extent of a parking lot. The latter must be graded and surfaced and certain structures, such as fences, booths and the like, are either essential or usual. In a sale of the property, a buyer would naturally expect to pay for what he found there. Furthermore, the owner whose land is being condemned would be fully compensated if he were paid what an equivalent unimproved lot would cost, plus the replacement value, less depreciation, of whatever improvements contributed to the conversion of the site to a parking lot. In any event, that is the maximum value that can be placed on any improvement (*People ex rel. Hotel Paramount Corp.* v. *Chambers,* 298 N. Y. 372).

One of the claimants' experts testified that there is a market for parking lots at prices in excess of the sum of these figures (base value of the land plus replacement cost of the improvements). Doubtless, this is so. But the excess price does not represent a value of the land. It constitutes the good will of the business of parking cars which is not a compensable item in condemnation.

Considerations of excess rent do not enter these cases, as the record does not show the facts necessary to raise the question.

Accordingly, the awards as to each of these parcels as to base land value are reversed and remanded to Special Term for retrial in accordance with this formula. As to the land value of parcel 39, the city concedes that if there be no additional award for parking lot use then there should be a 10% increment for plottage. Of course, upon a retrial, Special Term in fixing land values will consider this factor in regard to any parcel to which it may be applicable. In all other respects, the awards are affirmed.

### D. P. No. 40

Involved is a reconstructed 5-story basement and brick building. Claimant on its appeal argues that the award is insufficient.

Claimants' and city's experts appraised by building residual capitalization. The claimants' appraisal for land and building

was $114,759 of which $40,656 was the value fixed for the land. The final award was $110,150 of which $40,650 was for the land. The city concedes that parcels 39 and 40 should be increased by a 10% increment on the basic valuation for plottage if there be no award for parking lot use. Since we are disallowing any award for parking lot use, the award for this parcel should be increased by $4,065. The total award will therefore be $114,215. The award is accordingly increased to that figure and, as so increased, is affirmed.

### D. P. No. 60

This parcel was improved with the remains of a 5-story brick loft building. Claimant appeals from the award for that building. A portion of the building had been taken in a 1953 condemnation proceeding to widen Park Row. In that proceeding the court awarded reconstruction costs of $13,584 fixing the value of the building, before taking, at $28,534. However, instead of reconstructing, claimant boarded up the building so that at the time of this proceeding the building because of deterioration and vandalism had been reduced to a gutted shell of the conceded value of $3,000. The claimant's expert fixed a structural damage of $14,416. This he did by adopting the valuation of $28,534 for the building found in the prior proceeding, hypothesizing the reconstruction of the building and deducting therefrom the award for reconstruction costs of the prior condemnation proceeding.

Special Term awarded $3,000 for the structure.

Claimant contends that at the time of the antecedent award in the proceeding to widen Park Row, there was a reasonable expectation of the instant taking and that reconstruction of the remaining portion of the building was not undertaken in order to minimize the damage the city would be obliged to pay in this proceeding. From a hindsight point of view, had the building been restored, the city in this proceeding would have been called upon to pay the reconstructed value, thereby paying *de novo* the amount allowed on the prior partial condemnation. In sum, if claimant had gone ahead with the restoration of the building, the damage to the city would have been unduly enhanced.

However, there is no proof in the record to establish that this was what motivated the claimant in not restoring the building. True, there was an offer of proof on this subject but that only went to the advice the claimant's attorney gave on this subject. There is no testimony that claimant accepted the advice and acted upon it.

We conclude that the rule of just compensation requires that the claimant be fully compensated for his property on the basis

of value as if restored according to the formula set forth herein, if claimant establishes on a new trial that the failure to restore the property was induced by a desire to save the city the cost of restoration.

Therefore, on equitable considerations, we modify so much of the award for this parcel as fixes a building award for this parcel and remand for a new trial in accordance with this opinion.

Accordingly, the awards for Damage Parcels 17–18, 39, 53–54, 56 and 57 should be modified on the law and the facts to the extent of reversing the land awards as to these parcels and remanding them to Special Term for retrial in accordance with the formula fixed herein and otherwise affirmed; the award for Damage Parcel 40 is modified on the law and the facts to increase the land award to $114,215 and is otherwise affirmed; the award for Damage Parcel 60 is modified on the law and the facts to the extent of reversing the award for the building and remanding for retrial for the reasons indicated herein and otherwise affirmed. In each instance, no costs are allowed.

EAGER, J. (concurring in result). I concur in the result. For the reasons stated in the opinion of the majority, I would modify the final award for D. P. 40 to increase the same as therein indicated. I would reverse and vacate the awards for the five parcels where parking lots were involved and also the award for Damage Parcel 60, and remand for retrial the issues with respect to valuation of said parcels, but I do not concur in full with the reasoning of the majority.

I would agree, of course, that the market value for unimproved land in an area plus replacement cost of improvements, less depreciation, is an important factor to be considered in fixing the amount of an award for the condemnation of improved land. I would also agree that, where the market value for unimproved land in an area is fairly and properly establishable, then, the compensation to the owner for a lot improved for business purposes would generally be limited to the estimated market value of his lot, as if unimproved, plus the depreciated replacement cost of his improvements; and that, in connection with the taking, he would not be entitled to be paid for the good will of his business. But, clearly, the fixing or limitation of a condemnation award on basis of market value depends upon a competent and realistic showing of such value, and I feel that the purport of the majority opinion, considered as a whole and in light of the present record, will tend to unduly limit the parking lot claimants here in their proof as to the fair and reasonable value of their respective properties. From my standpoint there should be further elaboration.

Certainly, an owner having a constitutional right to "just compensation" for real property condemned for a public use is entitled to receive the full equivalent in value for the property taken, land and improvements (see *County of Erie* v. *Fridenberg,* 221 N. Y. 389, 393). "Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken" (*United States* v. *Miller,* 317 U. S. 369, 373). Thus, he is entitled to recover the fair market value of his property based on the most advantageous use to which it can reasonably be put. (See *Parkill Realty Corp.* v. *State of New York,* 254 App. Div. 78, affd. 279 N. Y. 656.) "The special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain" (*Mitchell* v. *United States,* 267 U. S. 341, 344–345). "Accordingly, the better reasoned cases hold that, although the value of a business which is being conducted upon the real property condemned may not ordinarily be added to the market value of the realty as damages for taking, the fact that a given business is in operation on the property should be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value — if, that is, the use of the real property for that purpose enhances the value of it." (*Housing Auth. of City of Bridgeport* v. *Lustig,* 139 Conn. 73, 76–77, citing cases.)

So, where real property, taken in eminent domain proceedings, has been improved in a manner to enhance its value in the market for a commercial or industrial use, then surely the land and improvements are to be appraised as a unit (see 19 N. Y. Jur., Eminent Domain, § 179). The "ultimate question" is, what is the value of the land as enhanced by its improvement (see *Matter of City of New York,* 198 N. Y. 84, 91) with full consideration to be given, of course, to its adaptability for special uses as improved. Thus, generally speaking, it would be improper for the court, charged with fixing the compensation due the landowner, to merely go so far as to estimate separately the value of the land and the value of the improvements and fixtures, and then to add together such separate values for the purpose of fixing the award to him. (See, 1 A. L. R. 2d 881, Note; *Banner Milling Co.* v. *State of New York,* 240 N. Y. 533; *United States* v. *City of New York,* 165 F. 2d 526; *United States* v. *7.2 Acres of*

*Land,* 117 F. Supp. 499, 503; *Virgin Is. Housing & Urban Renewal Auth.* v. *19.0976 Acres of Land,* 169 F. Supp. 33, 37.)

Particularly, on the record here or on a similar record developed on a new trial, to assume a market value for unimproved land in this highly developed industrial and commercial area in downtown New York City,— on a theoretical premise that land in the area without buildings or other improvements would be worth so much on a square foot unit basis,— and then to limit the owner of a valuable parking lot in the area, to a recovery of such value plus the depreciated cost of his improvements, is an unfair and unsound approach in the matter of fixing the just compensation which must be paid to him. Under the circumstances, the estimation of value of unimproved land in the area is " inevitably factitious ", and applicable would be the rule that " it is erroneous as matter of law ever to add together a supposititious ' site ' value and a supposititious improvement value " for the purpose of fixing true appraisal value. (See *United States* v. *City of New York, supra,* pp. 528, 529.)

Of course, if competent proof is adduced as to the reasonable market value of unimproved land in the area, adaptable for parking lot development, then I would agree that this factor is entitled to prime consideration in the matter of fixing the value of the particular parking lots which are the subject of the proceeding at bar. But, as I understand it, the availability in the market of unimproved land in the area here generally depends upon one buying a building, tearing it down, and grading the lot. Involved, then, would be the cost of the lot and building and the cost of demolition and grading. Then, too, many of the buildings in the area are subject to tenancy rights, and to emergency housing, and business and commercial space legislation and regulations. All these factors, of course, would have to be considered in estimating the value of a parking lot on the theory that the owner should be limited to a recovery of the reasonable cost of a lot plus the value of his improvements.

So, in the light of the foregoing, the court, in an appraisal of the appropriated parking lots, should not limit itself to a consideration of a theoretical unit value of unimproved land in the area plus depreciated replacement value of improvements. It will be bound to give due weight to other factors, including location of the particular lots; parking lot income and potentialities; availability and demand for the lots for other suitable uses; sales, if any, of similarly comparable property; and, particularly, due regard should be given to the well-grounded appraisal estimates of duly qualified experts, if presented.

Now, as to Damage Parcel 60, while I concur in the remand for a new trial, I do not agree that the claimant, on the theory of estoppel and equitable considerations, may recover more than the fair market value of the property at the time of the taking. I agree with Mr. Justice STEUER that the award must be limited to such value. I do not agree, however, that the claimant, on the record here, should be limited to a recovery of an award to be computed by adding the value of the partially demolished and depreciated structure at the time of taking to an estimated value of the land.

As heretofore indicated, where land and improvements held in a single ownership are the subject of condemnation proceedings, the court should not fix and decree the making of separate and independent awards for the value of the improvements and for the land value. If the value of the land is enhanced by a structure existing thereon at the time of the taking,— and this would depend upon whether or not the structure here may be advantageously repaired or remodeled,— then, on proper proof, the claimant is entitled to an award for the value of the land and structure as a unit.

It is true that the determination of the court in the earlier condemnation proceeding may be receivable as relevant on the question of the usable value of the structure, as of the time of taking involved in the present proceeding, but the court would be bound to take into consideration the depreciation in such value, if any, occurring in the meantime. If it appears that the structure has so depreciated to the extent that it is worthless and adds nothing to the value of the land as of the time of the second taking, then the claimant would be limited to a recovery of the value of the land.

It appears that, in light of the foregoing, the claimant here may have a loss for which it will not be compensated. Such loss, however, would not be occasioned by the taking in either of the condemnation proceedings but would be a loss due, in a sense, to the claimant's neglect, or, in any event, to mere depreciation in value of its property during the period between the pendency of the two proceedings. During such time the property was owned by the claimant, and subject to its full control and disposition, and the city then had no control whatever over or responsibility with respect to the same. Therefore, the city cannot be chargeable for such loss on the theory of estoppel or otherwise. It is no more chargeable for such loss than it would be entitled to receive the benefit of an appreciation in value, if any had occurred in the meantime.

STEUER, J. (dissenting in part). I dissent from the ruling of the majority as regards Damage Parcel 60. The facts stated, only to the extent that it is necessary to pose the question, are: The improvement on the property had been the subject of a prior condemnation for a street widening and, as a consequence, a portion of the building was taken. The owner was paid an award of some $14,000, which was what was determined was the cost of restoring the building. He did not restore but boarded up the building and allowed it to deteriorate. There is no question but that the award made in this proceeding represents fair compensation for its present value. Petitioner's claim is that at the time he received the award he was already aware of the imminence of the present taking and for this reason did not restore the building. He claims the value of the building at the time of the prior condemnation less the amount of the award already received, on the theory that had he restored the building that is what its value would have been, and that his failure to expend the money was really an act of grace to the city, saving the city the cost of restoration. While I believe this offer of proof was not broad enough to establish his claim and that it would be subject to several factual infirmities, my objection to the contention goes deeper.

Condemnation is a special proceeding and a hearing on the quantum of the award is limited to what is fair compensation for the property taken. Here, the claim is not for the value of the property at the time taken but for what it would have been worth if the property had enjoyed a different history — and the fact that it did not may work out to the benefit of the city. To put it in legal phraseology, petitioner seeks a sum as the value, which sum the city, on the principle of equitable estoppel, is barred to contest by showing the actual value. Petitioner avers that he allowed his property to deteriorate but that he did so for the benefit of the city. Whatever his rights may be, if he has any, he has no right of recovery in this proceeding, which is one solely for the determination of the value at the time of taking.

BOTEIN P. J., VALENTE and McNALLY, JJ., concur in Per Curiam opinion; STEUER, J., dissents in part in opinion; EAGER, J., concurs in result in opinion.

Third separate and partial final decree modified as follows: Awards for Damage Parcels 17–18, 39, 53–54, 56 and 57 modified on the law and the facts to the extent of reversing the land awards as to these parcels and remanding them to Special Term for retrial in accordance with the formula fixed in the opinion Per Curiam of this court filed herein and otherwise affirmed;

the award for Damage Parcel 40 is modified on the law and the facts to increase the land award to $114,215 and is otherwise affirmed; the award for Damage Parcel 60 is modified on the law and the facts to the extent of reversing the award for the building and remanding for retrial for the reasons indicated in the opinion *Per Curiam* of this court filed herein and otherwise affirmed. In each instance, no costs are allowed. Settle order on notice.