In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Relative to Acquiring Title to Real Property Required for Water Street and Pearl Street in the Borough of Manhattan. FAIRFIELD COUNTY TRUST Co., as Executor and Trustee of HARVEY H. WATKINS, Deceased, et al., Respondents-Appellants; 127–129 WATER STREET CORP., Respondent; GILLIES COFFEE COMPANY, Appellant.

First Department, June 13, 1963.

*Irving Genn* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellant-respondent.

*Loretta A. Conway* of counsel (*Matthew J. Tackella* with her on the briefs; *McLaughlin & Stern,* attorneys; *Lamb & Lamb,* attorneys), for William Katz and another, respondents-appellants, and Gillies Coffee Company, appellant.

*Alfred D. Jahr* for Seven Fourteen Realty Corp., respondent-appellant.

*Bernard L. Bermant* of counsel (*Skinner, Bermant, Leddy & Raber,* attorneys), for 127–129 Water Street Corp., respondent, and 143–149 Water Street Corp., respondent-appellant.

*Melville Southard* of counsel (*De Forest, Elder & Mulreany,* attorneys), for New Jersey Zinc Company, respondent-appellant.

*Anthony Romano* of counsel (*Romano & Schenker,* attorneys), for Alfred A. Rosenberg and another, respondents-appellants.

EAGER, J. I concur in the affirmance of the findings and the awards with respect to damage parcels 13–13A, 19–19A, 31–31A and 32–32A. I concur in the modification of the decree to vacate the awards for damage parcels 22–22A, 36–36A, 39 and 80–80A, and the remanding of the issues on these parcels to Special Term for retrial. I agree that the record is inadequate to support a proper determination with respect to the value of these parcels.

Clearly, an owner of land taken in condemnation proceedings is entitled to recover the fair market value of his property based

upon the most advantageous use to which it can reasonably be put. (*Olson* v. *United States,* 292 U. S. 246, 255; *St. Agnes Cemetery* v. *State of New York,* 3 N Y 2d 37, 41; *Matter of Port of New York Auth.,* 2 N Y 2d 296, 301; *Sparkhill Realty Corp.* v. *State of New York,* 254 App. Div. 78, affd. 279 N. Y. 656; *Matter of City of New York* [*Inwood Hill Park*], 230 App. Div. 41, 47, affd. 256 N. Y. 556.) Where the best use for a particular parcel of property and its highest market value arises from its use as a parking lot, then the owner is entitled to have it appraised on such basis. (See *Matter of Port of New York Auth., supra,* p. 301.) Certainly, in the appraisal of a parcel on the basis of its marketability as a parking lot, the reasonable rental value of the premises for parking lot purposes is an important factor to be considered. It is clear, however, that the capitalization rate to be employed in the use of this factor may, as stated by Mr. Justice STEUER, vary, dependent upon the facts and, in a particular case, must find support in the record.

With respect to damage parcel 36–36A, there is a question posed as to the allocation of the award between the landlord and the tenant. This is one of the parcels remanded for further proof, and because we believe that Special Term was in error in charging the leasehold interest with a prorated portion of the demolition and grading cost, assumed and paid by the tenant, a discussion of the facts and the principles involved are in order.

These premises were leased for a period of 10 years commencing on December 1, 1953. In addition to a payment of a yearly rental of $7,200, the tenant agreed to demolish the buildings existing thereon and to grade and improve the premises for use as a parking lot. The tenant carried out its agreement in this respect and the court found that he had expended altogether the sum of $16,000 in effecting the demolition and improvement.

The lease was duly assigned to the claimant-appellant who has succeeded to the rights of the tenant. Thereafter, these proceedings to condemn the property were instituted, with the city taking title as of October 1, 1958, with the lease then having 5.17 years yet to run. The parties, for determination of their rights herein, do not rely upon any special provision in the lease, such as a cancellation clause or other clause defining their rights upon a condemnation of the subject premises.

It is true that the improvements of the premises required by the terms of the lease to be effected by the tenant were of a nature that, upon the completion thereof, they became merged with the freehold and the ownership thereof became vested in the landlord as the owner of the land. This is not disputed by

the tenant here. For the period of the term of the lease, however, the tenant, in his use of the premises, would receive the benefit of the improvments and, after paying the cost thereof, the only obligation remaining on his part was the payment of the stipulated rent of $7,200 a year.

On the condemnation of the leased premises, the tenant, in the absence of an agreement to the contrary, was not entitled to receive compensation for the cost or value of his improvements to the land because, as aforesaid, the improvements were merged in the fee. (See *Marfil Props.* v. *State of New York,* 9 Misc 2d 878, 880; *Garlock* v. *United States,* 53 F. 2d 926.) But, in appraising the value of the tenant's leasehold interest, "the value of the improvements to the premises for leasing purposes for the remaining unexpired term is a proper matter for consideration" (*Marfil Props.* v. *State of New York, supra,* p. 880). To the extent the improvements have enhanced the market value of the tenant's interest "they become an item of value to be considered in fixing the value of the lease." (*Garlock* v. *United States, supra,* p. 927.) The purchaser of the lease in the open market would derive the benefit of these improvements, and, without additional expense on account thereof would, on the payment of rent reserved, have the use of the property in its improved condition; and the appraisal, in condemnation proceedings, of the tenant's interest should proceed on this basis. (*Garlock* v. *United States, supra; Marfil Props.* v. *State of New York, supra.* Also *Clarkson* v. *Skidmore,* 46 N. Y. 297, 302; *People ex rel. Gorham Mfg. Co.* v. *State Tax Comm.,* 197 App. Div. 852.)

Of course, the tenant is limited to a recovery of the difference between the rental value of his leasehold for the unexpired portion of the term and the rent reserved in the lease for such period. (See *Matter of City of New York* [*Delancey St.*], 120 App. Div. 700; *Matter of City of New York* [*Washington St.*], 272 App. Div. 826; *Matter of City of New York* [*Bronx Riv. Expressway*], 278 App. Div. 813, 814; *Matter of City of New York* [*Bronx Riv. Expressway*], 282 App. Div. 925, affd. 308 N. Y. 782.) In a proper case, also, but not relevant here, the value of a leasehold interest would be affected by special and open or executory covenants on the part of the tenant, constituting a burden on the leasehold estate, such as covenants to pay taxes, to keep the property insured, to keep premises in a certain state of repair or to make certain improvements. (See *Matter of William and Anthony Sts.* [*City of New York*], 19 Wend. 678.)

The leasehold interest here should be appraised on basis of the difference between the reasonable rental value of the premises and the rent reserved for the balance of the term, as discounted by the factor of present worth (referred to in the record as the Inwood factor). But Special Term, in addition to deducting as rent reserved the fixed annual rental of $7,200, also prorated the demolition and grading costs of $16,000 over the term of the lease and, treating the same as rent reserved, deducted on a yearly basis the sum of $1,600 in addition to the annual rent of $7,200. So the court, in estimating the value of the leasehold, charged a total of $8,800 as annual rent reserved against the estimated annual rental value. But the tenant had already paid for the improvements to the premises and, thus, the effect was that the tenant was charged with the cost a second time. This, on its face, was manifestly improper and cannot be justified on the theory that the cost of the improvements was part of the rental reserved. The improvements having been completed by the tenant at the beginning of the term, the cost thereof assumed by the tenant was the equivalent of rent paid in advance and was not a burden against the leasehold as rent reserved.

Where the rental for premises, or portion thereof, is paid in advance at the beginning of the term, the tenant, on the appraisal of his interest in connection with the taking of the same in condemnation proceedings, would not be chargeable a second time with the same as rent reserved. (See *United States* v. *6.87 Acres of Land in Garden City*, 147 F. 2d 351.) Rent prepaid, as already received by the landlord has, figuratively speaking, been placed in his pockets. To that extent, the value of his interest is diminished by the outstanding lease and to that extent the value of the leasehold interest is increased. One purchasing, in the market, the interest of the landlord subject to the lease would take the premises with the rental income thereof reduced for the term of the lease to the extent of the prepaid rent. And a purchaser, in the market, of the leasehold would acquire the benefit of the prepaid rent.

It is true that in the carrying of a leasehold interest on the tenant's books, proper accountancy for bookkeeping or income tax purposes might require that the entire cost to him for his interest be spread over the entire term of the lease. Included to be so treated would be rent paid in advance and the cost of initial improvements. But values in condemnation are not estimated on a bookkeeping basis. Also, it is noted that in certain appraisal areas where it is proper to average over the term of the lease the total cost to the tenant for his leasehold

interest, such as in the case of an assessment of such interest for purposes of taxation, it is proper to evaluate the leasehold interest on basis of a net rental value calculated after a deduction of all of such cost amortized on a yearly basis. (See *Blinn Lbr. Co.* v. *County of Los Angeles,* 216 Cal. 474; Ann. 84 A. L. R. 1310.) But the appraisal of a leasehold interest, upon the condemnation of the subject premises, plainly requires different treatment. There, the tenant on condemnation of his interest, is entitled to receive the reasonable value thereof as of the precise time of the taking. In fact, the charging of the tenant with prepaid items on a yearly amortized basis makes no sense for, if on the one hand, he is to be so charged in estimating the net rental value at the time of the taking, then, on the other hand, his right to be reimbursed for the "unamortized" balance of the prepaid items would be required to be taken into consideration. (See Friedman, Encyclopedia of Real Estate Appraising, p. 476.)

In the final analysis, the leasehold interest of the subject premises improved and used as a parking lot, must be appraised at its fair market value at the time of taking. (See *People ex rel. Gorham Mfg. Co.* v. *State Tax Comm.,* 197 App. Div. 852; *Matter of City of New York [Washington St.]*, 272 App. Div. 826, *supra.*) "The value of the leasehold is, in effect, the amount for which the lessee could sell his leasehold in the current market" (Friedman, Encyclopedia of Real Estate Appraising, *supra,* p. 473). A purchaser of the leasehold interest on the open market, as of the time of the taking of the subject premises, would derive the benefit of the parking lot improvement for the unexpired term of the lease without any additional expense or payment to the landlord on account thereof, and this is the basis on which such interest is to be appraised. On this basis, the tenant receives just compensation and also, on this basis, the right of the landlord to receive the full market value of and just compensation for his interest is not unduly abridged because he has contracted away for the lease term the use of the premises as improved without further payment to him on account of the improvements. (See *Clarkson* v. *Skidmore,* 46 N. Y. 297, 302, *supra.*)

STEUER, J. This proceeding for the condemnation of certain properties in the vicinity of Water Street involves several damage parcels of which eight are the subject of appeal. In four of these we find no error in the findings and disposition made by Special Term and no question that requires discussion. Damage parcels 13–13A and 31–31A, being the subject of cross

appeals, are affirmed, without costs. Damage parcels 19–19A and 32–32A are affirmed, with costs to the respective respondents.

The balance of the damage parcels, 22–22A, 36–36A, 39 and 80–80A, consist of land unimproved except for grading and paving and used as parking lots. We find the record insufficient to make a determination of value and remand the proceeding as far as these parcels are concerned for further hearings.

Changing conditions call for new approaches in method of value determination. Time was when vacant land in the center of a metropolis had a prospective value only. Any use that the land could be put to was so temporary and the return so minimal that the value of the land as the prospective site for a building was not affected. Today, at least in certain locations of metropolitan New York, it is subject to grave question whether this continues to be true. The vast increase in the use of the streets for vehicular traffic has necessitated restrictions against parking and these restrictions have in turn created a need for space where automobiles may be accommodated off the highway. Parking lot operation has ceased to be a marginal business and land devoted to its use, in certain locations and at certain times, provides an adequate return. On the other hand, it can be seen that in other locations this will not be the situation at all. The distinction will arise from two grounds. The area may be one in which the need for such accommodation does not exist, or it may be one where land values are so high that a parking lot, except as a possible interim enterprise, would not be feasible.

There is no finding, nor any basis for a finding, as to what the situation is with respect to the parcels involved in this appeal. There are adequate proof and findings with which we are in accord as to the base value of the land, that is, the price a buyer would pay for it in order to put a structure on it. An additional award is sought on the theory that value as a parking lot adds to the value of the lot. Whether or not it does depends on several factors. A buyer intending to build will not, in economic theory at least, pay more for a particular plot because a parking lot is in operation on it than he would pay for a comparable plot that was not so used. So that if the plot is being held for sale, the value of the land is merely the base value. In condemnation this would be increased by the value of whatever incidental improvement, such as fences, shanties and paving, were on the lot (*Matter of City of New York* [*Park Row Slum Clearance*], 17 A D 2d 534).

However, if the rental value of the property is such that the owner would realize a greater return from leasing it to a

parking lot operator than he could anticipate from its rental or sale to a builder, he would not sell it at the price the latter would be willing to pay. The parking lot operation then becomes the most profitable use of the land, and the land value is to be determined on that basis. While the record contains ample proof of the rental value of parking lot space (in this area it was practically undisputed that this was $3 a square foot), there was practically nothing but the bare conclusions as to what capitalization rate should be employed. Assuming that a parking lot is the best use of the land, it is almost demonstrable that the rates advanced by the respective experts were not applicable. Claimants' experts used the rate for land under a building, namely 5 to 6%, and the city's experts advocated the rate for a taxpayer, namely, 10 to 12%. While both these rates are properly applicable to the situations they are customarily employed in, this is neither situation. So as to this factor, and as to what is the best use of the plots in question, the record is unsatisfactory.

If it should develop that use as a parking lot is merely a temporary expedient, then, of course, the capitalization rate would be that of a temporary structure. In some instances this might possibly indicate a value in excess of the base value plus improvements. If so, it indicates an added increment due to the particular location. Otherwise, the temporary use adds nothing to the base value.

In the resolution of these questions it should be apparent that the usual approach in making proof will be of small help. The exaggerated optimism of claimants' experts based on assumptions that the property will benefit from the highest rental that any building in the neighborhood enjoys, plus the lowest expenses that are conceivable, as contrasted with the pessimism that seems to govern the opinions of the city's experts, will be of even less value in the resolution of these questions than they are in the routine determination of the issues of quantum.

In one damage parcel (36–36A) a question arose as to the allocation of the award between the landlord and the tenant. While this is one of the properties remanded for further proof and consideration and hence there is no award to be divided, it is nevertheless fitting that we indicate to Special Term our views on the question presented.

On this question I am not in accord with the views expressed by my colleagues through the medium of the concurring opinion by Mr. Justice EAGER, and Special Term should perforce adopt that view rather than what is stated here. I am constrained by my interpretation of the applicable law to a differing view, the

grounds of which I feel should be expressed. The lease in question was for a period of 10 years beginning December 1, 1953. It was assigned to the present tenant on August 31, 1953, prior to the commencement of the term, on condition that the tenant demolish the existing buildings and put the lot in shape for a parking lot. The rent reserved was $7,200 a year and at the time of taking there was somewhat over five years to expiration. No question arises due to any condemnation clause in the lease, the landlord conceding that the leasehold value is to be carved out of the principal award. There is also no dispute but that the proper method of valuation is the difference between the reasonable rental and the rent reserved in the lease for the unexpired portion of the lease as reduced by the factor of the present value (usually called the Inwood factor) (*People ex rel. Delaware & Hudson Co.* v. *Feitner,* 61 App. Div. 129, affd. 171 N. Y. 641). The question arises as to what is the rent reserved in the lease. Where a tenant is obligated by his lease to make certain improvements to the fee it is obvious that the cost to him of his occupancy is increased by the cost of these improvements (*Matter of William and Anthony Sts.,* 19 Wend. 678, cited with approval in *Matter of City of New York [Delancey St.*], 120 App. Div. 700, 707). As the improvements extend over the entire term, both as an accounting and a practical matter, the cost would be amortized over this period and would be added to the rental. The tenant's argument is that these costs have been met and that the loss to him by virtue of the condemnation is the difference between what he would have actually to pay (the reserved rent) and the reasonable rent. It is argued that if the tenant were to sell the lease at this point he would receive a price based not on what he had expended as rent but on what the prospective buyer would calculate as the amount to be expended as rent. Doubtless this is true, but the argument loses sight of the basic manner in which awards are made to leaseholders in condemnation. The award is for the loss of the contract, not the value of the leasehold estate. If the law were as the tenant claims, the award would be to the owner for the value of the property and the tenant for the value of his lease. It is distinctly not so. There is, in effect, only one award — that is the value of the property. But if the lease diminishes the value of the estate, and only in that event, a portion of the award represented by the extent to which the lease diminishes the value of the property is given to the tenant (*Clarkson* v. *Skidmore,* 46 N. Y. 297, 302). So that no matter how valuable a lease may be to a particular tenant, if it is not a lease at less than the rental value of the premises

the tenant is entitled to nothing. And it is for that reason that the decisions almost invariably use the expression "carved out of the estate" to describe the portion of the award assigned to the tenant.

It should be apparent that, these being the factors that control, it makes no difference whatsoever whether the rent has been anticipated or deferred. That fact can make no difference in the determination of whether or not rental value exceeds the reserved rent. Nor is a condemnation proceeding a proper forum for determining equities between the landlord and the tenant. If such equities do exist and are actionable, they should be resolved in a suit between those parties. If the lease provided that the entire rental was payable in advance and the tenant paid it, he could hardly claim that his damage was the entire amount of the reasonable rental because he had no further payment to make.

The decree should be modified, on the facts and the law, by vacating the awards for damage parcels 22–22A, 36–36A, 39 and 80–80A, and remanding the matter to Special Term for further proceedings in accord with this opinion, without costs, and, in other respects, affirmed, with costs to claimant in damage parcels 32–32A and costs to city in damage parcels 19–19A.

BOTEIN, P. J., BREITEL and RABIN, JJ., concur with EAGER, J.; STEUER, J., concurs in result as to leasehold interest, in opinion, in which all concur except as to leasehold interest.

Decree unanimously modified, on the facts and the law, by vacating the awards for damage parcels 22–22A, 36–36A, 39 and 80–80A, and remanding the matter to Special Term for further proceedings in accord with the opinion of STEUER, J., filed herein, without costs, and, in other respects, affirmed, with costs to claimant in damage parcels 32–32A and costs to the City of New York in damage parcels 19–19A. Settle order on notice.