STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Respondent,

v.

H. J. HOWALD et al., Defendants,

Exceptions of: Echeal T. Feinstein, Sally C. Feinstein, Anthony Canzoneri and Pauline Canzoneri, Defendants-Appellants.

No. 46189.

Supreme Court of Missouri,

Division No. 1.

Sept. 8, 1958.

Jesse E. Bishop, Bernard Hollander, Echeal T. Feinstein, Anthony Canzoneri, St. Louis, for appellants.

Robert L. Hyder, Ralph H. Duggins, Jefferson City, for respondent.

HOLMAN, Commissioner.

In this condemnation case the commissioners appointed by the circuit court awarded Echeal T. Feinstein et al. (hereinafter referred to as defendants) the sum of $26,475 as damages for the appropriation of their property and they filed ex-

ceptions to said award. The subsequent circuit court trial resulted in a verdict and judgment for defendants in the amount of $23,143, and defendants have duly appealed therefrom. Since defendants claimed damages in excess of $45,000 and offered evidence in support thereof, we have appellate jurisdiction as the amount in dispute exceeds $7,500. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

Plaintiff condemned the whole of defendants' property in connection with improvements being made upon U. S. Highway 66. The tract in question contained about 12½ acres and was located in the town of Eureka, St. Louis County, Missouri, about 20 miles from the west limits of the City of St. Louis. It had a frontage of about 490' along the north side of Highway 66. The portion of the tract near the highway had been used in the operation of a restaurant-motel business. About 25 years ago eight buildings had been constructed thereon. On the highway level there was a sizeable restaurant building, a filling station building, and a two-room cottage. To the rear of these buildings (on a level 15 feet higher) were five other buildings divided into ten motel units. All of the buildings were modern and all but one had been constructed of stone that had been obtained from quarries located on the instant tract. The land to the rear of the motel cottages was very rough and was largely covered with brush and small trees. The main line of the "Frisco" railroad ran along the eastern boundary of the tract.

The points raised upon this appeal do not require a detailed statement of the evidence relating to the value of the property. Defendants presented two experts in the field of appraising real estate, one of whom fixed the reasonable market value of the property at $45,830, and the other at $47,914. Plaintiff likewise offered two expert witnesses who fixed the value at $17,800 and $18,000 respectively.

Three of the points briefed by defendants do not relate to the issue of defendants' damages but challenge the validity of the condemnation proceedings. It is said that the trial court did not acquire jurisdiction to enter the "Order of Condemnation" because (1) no evidence was presented to prove the allegations of the petition, (2) no proof was required as to the necessity of taking the part of defendants' land not actually to be occupied by the public improvement, and (3) plaintiff did not bargain in good faith with defendants as to the matter of compensation before filing the petition. We will consider those three contentions together.

At the outset of our consideration of the foregoing we note that defendants did not file any answer herein and hence the allegations in plaintiff's verified petition were not denied. Moreover, defendants filed no motion or other pleading (prior to the entry of the order of condemnation) raising any issue as to plaintiff's right to condemn. There was evidence to indicate that one of the defendants (an attorney) was present when the petition was considered by the court and mentioned that plaintiff ought to present evidence. After the court entered the order of condemnation and the commissioners had filed their report fixing the damages, defendants filed a motion to set aside the appointment of commissioners in which the jurisdiction and authority of the court in this case was attacked by various general allegations. That motion was subsequently overruled. It was stipulated that the aggregate amount awarded by the commissioners was paid into the registry of the circuit court by plaintiff on September 13, 1955, and that defendants thereafter received from the circuit clerk and receipted for the sum of $26,475, the amount of damages awarded to them.

It is apparent that the circuit court had jurisdiction of the subject matter and of the defendants. In the order of condemnation that court determined the questions relating to plaintiff's right to condemn the various tracts described in the petition. It is admitted that defendants

have "taken down" and accepted the money paid into court for their benefit in accordance with the award of the commissioners. In that situation defendants are now estopped to question any matter except questions arising in the trial of the issue relating to the amount of damages. "Such act [acceptance of the award] upon his part is a concession by him that the plaintiff is entitled to take the property under the proceedings, upon the payment of full and adequate compensation thereof. If he expects to question this right to condemn at all, or the regularity of that part of the proceeding, he should not take down the allowance of the commissioners, which for the time stands for just compensation. In other words, he should not place himself in the attitude of claiming all his original interest in the land, whilst having adequate compensation thereof in his pocket. A litigant should not be permitted to accept the fruits of a proceeding, and at the same time question the regularity thereof, for his own further self-aggrandizement. By taking down the money he estops himself from questioning the regularity of the proceeding up to that point, although under the statute and our holdings he is permitted to further litigate the question of whether or not the allowance made by the commissioners is full and just compensation." Chicago Great Western R. Co. v. Kemper, 256 Mo. 279, 166 S.W. 291, 294. See also Kansas City Southern Ry. Co. v. Second Street Improvement Co., 256 Mo. 386, 166 S.W. 296. We will therefore give no further consideration to the foregoing contentions.

■ In the next point briefed the defendants have combined a number of contentions relating to alleged errors committed by the court in excluding evidence offered by them and in restricting their cross-examination of certain of plaintiff's witnesses. The first of those contentions related to the cross-examination of Victor S. Hallauer who had appraised the property for plaintiff. Defendants sought to show upon cross-examination of this witness that he had also appraised a building, similar in construction to theirs, located upon adjoining property (Lamar property) and that in the trial of the issue of damages concerning that property the witness used a lower rate of depreciation than he used in arriving at the value of the defendants' buildings. Defendants in their brief say that the court refused to permit them to examine the witness upon that matter. The transcript does not support that statement. It is true that the court at one time sustained an objection to a question that sought to show that defendants' buildings and the Lamar building were comparable in construction. Defendants then made an offer of proof and the court ruled that the defendants would be permitted to make the proof. Thereafter, defendants cross-examined the witness at some length concerning the matters they now say they were precluded from showing. We rule this point against defendants.

The next contention of defendants is stated in their brief as follows: "In connection with the same witness, the appellants sought to introduce Exhibit W, being a photograph of the improvements on the Lamar property, for use in interrogation of relator's said witness, Hallauer. Since the photograph would show the improvements on the Lamar property to be, in fact, comparable and virtually indistinguishable from the improvements on appellants' property, it was error on the part of the court. By the admission of this exhibit, appellants could have laid their groundwork to establish by the State's expert witness that their property and improvements should have been subject to the lower rates of physical and functional depreciation used by this witness in the case of the Lamar property."

■ Assuming (but not deciding) that Exhibit W was admissible, we rule that its exclusion, under the circumstances of this case, did not constitute prejudicial error. This for the reason that the evidence would have been merely cumulative as defendants proved by witness Hallauer that the outside

construction and appearance of the Lamar building was substantially the same as defendants' buildings. That is also shown to some extent by another photograph (defendants' Exhibit I) which was admitted in evidence. Moreover, the exhibit was identified during the cross-examination of witness Hallauer and the transcript does not disclose that any ruling of the trial court prohibited the defendants from using the exhibit during the cross-examination of that witness. It was not actually offered in evidence (and excluded) until all of the testimony had been taken and just before defendants rested their case.

Defendants offered in evidence the detailed plans which plaintiff had filed in the office of the county clerk of St. Louis County. They then called as a witness, S. M. Mauer, the district right-of-way agent for plaintiff, and examined him in regard to the size and description of defendants' land as shown by said plans. In that connection defendants sought to have the witness read the words "proposed maintenance site" appearing within the area designated as defendants' property. Upon plaintiff's objection the court refused to permit the reading of those words. In their offer of proof defendants stated that the purpose of the offer was to show "the nature of the usage to which this land will be put as a determinate factor or a factor to be considered in establishing the value of this land as of June 1955." Defendants now contend that the court erred in sustaining the objection to the offer. They say that they should have been permitted to show any use to which the property is reasonably adapted in an effort to show the market value thereof.

■ We do not think the court erred in refusing to permit the reading of the words in question. Since all of the tract was being taken, the sole issue was a determination of the reasonable market value thereof. The terrain and improvements thereon were fully described to the jury. The words in question do not convey any clear meaning and no offer was made to fur-

ther explain them. It would appear from defendants' offer of proof, however, that they were seeking to show an increased value by reason of the use that the State proposed to make of the condemned property. Such would seem to be improper. In that connection it has been said that "compensation must be reckoned from the standpoint of what the landowner loses by having his property taken, not by the benefit which the property may be to the other party to the proceedings; therefore the value of the parcel to the condemnor, or the need of acquiring the particular parcel for the proposed improvement * * * cannot be considered as an element of damage to the landowner." 29 C.J.S. Eminent Domain § 160, p. 1028. It could hardly be contended that there would have been any general demand for the land (prior to its appropriation) for use as a highway maintenance site as no one except the State would have had any use for this land for that particular purpose. As indicated, we rule this point against defendants.

■ One of plaintiff's witnesses was Alvera Schulz, a former lessee of the premises. Defendants sought to show by cross-examination of this witness that her lease (executed about a year before the taking) had contained an option to purchase the premises for $40,000. They now contend that the court erred in refusing to permit that showing. The lease was not offered in evidence but defendants sought to get the option clause in evidence in the following manner: "Q. (By Mr. Feinstein) Did you read a clause that was written into this lease which reads as follows: 'It is further agreed by and between the parties that the lessees shall have the right to purchase the leased premises—' Mr. Duggins: I am going to object to anything in that lease as being immaterial and irrelevant as to the value of this property. The court: Objection sustained." Defendants have not cited any authority for their contention that the option clause was admissible as evidence of the market value of their property. We think the evidence was properly excluded. An

option is only a continuing offer whereby the owner of land agrees with another that the latter shall have the privilege of buying the property, upon certain terms, within a specified time. No obligation is imposed upon the optionee to buy the land. When evidence of an option agreement is offered by the landowner to prove the value of the land it would appear to be inadmissible for the reason that such evidence would be self-serving. The amount at which a landowner has offered to sell his property should not be admitted as evidence on his behalf as to its value. In School District of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860, 863, this court went further and held that an executed but unconsummated contract of sale of nearby property was not admissible. The court was of the view that "to permit such contracts to be offered, as sought here, would open the door to contracts made in bad faith and with no intention of completion and consummation." See also State ex rel. State Highway Commission v. Clevenger, 365 Mo. 970, 291 S.W.2d 57.

The entire argument of defendants in regard to their final point is as follows: "The court erred in admitting relator's Exhibits 1–10, taken by the relator's witness, Hallauer, the week of trial, which exhibits showed the effect of neglect since appellants' property was taken over by the State, and not fairly representing the condition of their property at the time of taking." No authority is cited in support of that assignment. We note from our examination of the transcript that when these exhibits were actually offered in evidence the only ground of objection was that there was some descriptive writing on the back of the pictures and the court therefore instructed the jurors not to look at the back of the photographs as they were passed to them. However, we find that while plaintiff was seeking to have the witness identify the photographs defendants made a premature objection to Exhibits 2, 4 and 5 on the ground that they were taken more than a year after the date of appropriation and did not represent the condition of the buildings at the time of taking.

It is interesting to note that the pictures in question were taken on November 26, 1956, and that prior to the time they were admitted in evidence defendants had offered (and the court had admitted) pictures of the same buildings that had been taken on November 28, 1956, two days later than those now complained of. Therefore, if any prejudice to defendants resulted from the jury viewing these photographs (and we do not think there was) they had already placed the subject matter before the jury and were in no position to object to the admission of the instant photographs.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.