**LAND CLEARANCE FOR REDEVELOPMENT CORP.**

v.

**Elmer G. DOERNHOEFER et al., In Re Apportionment Proceedings, A. & L. Dunn Mercantile and Loan Company, Lessee, Respondent,**

v.

**Jacob S. GOLLUB, Frieda Gollub, David Kirsch and Ethel Kirsch, Lessors, Appellants.**

No. 50693.

Supreme Court of Missouri,

Division No. 1.

May 10, 1965.

Armstrong, Teasdale, Roos, Kramer & Vaughan, Harry S. Kramer, Jr., William H. Webster, Fred Leicht, Jr., St. Louis, for respondent.

John Grossman, St. Louis, for defendants-appellants.

HOUSER, Commissioner.

This is one branch of proceedings brought by Land Clearance for Redevelopment Corporation against numerous property owners in St. Louis to condemn land for the Downtown Sports Stadium Urban Renewal Project. The owners of the fee, the lessee of a portion of the building involved, and the tax collector were named as defendants in the proceedings affecting Parcel 128, which consisted of a lot and 3-story business building located at the southeast corner of 6th and Pine Streets. Commissioners made one lump sum award of

$190,000 as the value of the whole property without apportionment as between lessors, lessee and tax collector, all of whom claimed an interest in the property. No exceptions were filed. The award of $190,000 was paid into the registry of the court. The sum of $2,862 was allowed by the court and paid to the collector for real estate taxes due the city. This is a contest between the former owners of the fee, the lessors Jacob S. Gollub and David Kirsch and their wives, and the corporate lessee, A. & L. Dunn Mercantile & Loan Company, as to the proper apportionment as between them of the balance of $188,138. Tried to the court without a jury, judgment was rendered for lessee for $21,875. The former owners of the fee and their wives appeal, claiming that lessee is entitled to nothing, but if entitled to something the maximum allowable is $5,755. Accordingly, at least $16,120 is in dispute and we have jurisdiction. Art. V, Sec. 3, Mo. Const. 1945, V.A.M.S.; § 477.040, V.A. M.S.

The lease agreement was entered into July 27, 1950 for a term of 20 years at $750 monthly rental for the first 5 years and $800 for the next 15 years, with an option of renewal in lessee for an additional 10 years at the same rent and under the same terms and conditions by giving 6 months' previous notice in writing of its intention to renew. At no time did lessee exercise its option to renew. Lessee occupied the first floor, balcony and basement of the building. Other tenants occupied portions of the second and third floors. Lessee paid $250 per year for steam heat; $100 per year for water. In connection with its occupancy of the premises lessee made improvements at a cost of approximately $60,000. The date of taking under the condemnation proceedings was March 11, 1963. At that time there remained unexpired approximately 7½ years of the original 20-year term of the lease. After March 11, 1963 lessee continued to occupy the premises under arrangement with condemnor for temporary occupancy at $800 per month and finally moved from the premises on June 22, 1963.

Lessee's vice-president gave as his opinion that the value of the 7½ years remaining of the original 20-year leasehold estate was $25,000 and that based upon 17½ years the value was $50,000. Lessee produced two qualified appraisers who testified that the leasehold had a value of $40,000 and $35,000, respectively. Its first appraiser took into consideration the terms of the lease; the rental being paid for similar locations in the area; the length of time the lease had to run to expiration; the possible value of the privilege of renewal, which he valued at $1,000; the price being paid for similar type properties in the downtown area based on income; existing market conditions and future market trends. He testified that properties on the same side of 6th Street in the block north of the demised premises were commanding square foot rentals of $7.50, $5.40, $5 and $4.50, and that the fair rental value of the demised premises was $4.15 a square foot or $15,000 a year. He confirmed his $40,000 evaluation by capitalization of income and by separately computing the present day value of the reversionary interest. Lessee's second appraiser inspected the premises and familiarized himself with the terms of the lease. He was familiar with other comparable rental properties in the vicinity of 6th and Pine. He took into consideration the amount of money lessee spent improving the premises, which he said enhanced the value of the leasehold estate beyond the amount of the contract rental. His estimated value of $35,000 for the unexpired portion of the lease did not take into consideration the value of the option. While in his opinion the option had value, he did not assess its value.

Lessors produced two qualified appraisers. Their first appraiser stated that the economic rental of the property was $10,600 per year, or $3.03 per square foot— $1,000 per year more than the rent reserved in the lease. This $1,000 per annum he called a leasehold savings, or profit of the

leasehold interest. He arrived at the figure $10,600 by considering the property, the terms of the lease, the length of the unexpired term, what other comparable properties in the vicinity were renting for, adjusted to location, and other relevant factors. He projected the $1,000 over a period of 7½ years, using an 8% factor under the Inwood table of discount, which brought the amount down to a present cash value of $5,500, $5,475 to be exact, as the value of the unexpired portion of the lease. Projected over a 17½ year period, which assumed that lessee exercised the option, he said the value would be $9,250. He testified that under the formula approved in City of St. Louis v. Senter Commission Co., 233 Mo.App. 804, 108 S.W.2d 1070, assuming an annual rental of the demised premises of $9,600 plus $4,375 received by lessors as rent from the 2nd and 3rd stories (the demised premises producing from 60 to 70% of the rentals), the unexpired portion of the leasehold would be without value; that there would be a negative value (that is, a value less than the amount of the rent). Lessors' second appraiser, having thoroughly inspected the property, in answer to a hypothetical question, was of the opinion that the economic rental value of the demised premises was $10,650 per year, or $3.00 a square foot. Applying discount values he arrived at a leasehold value of $5,750 for 7½ years; $9,700 for 17½ years. He also testified that the leasehold would have no value under the Senter case formula. He conceded that previously (at a time when the original lease term had 8 years to run) he had given an opinion in writing valuing lessee's interest at $19,610.59.

◼ The trial court made findings of fact and conclusions of law; declared that the interests of landlord and tenant are to be determined from the evidence introduced showing the fair market value of the tenancy; that no arbitrary rule should be followed in arriving at such value; that the rule of the Senter case and of the prior case of McAllister v. Reel, 53 Mo.App. 81,

aff. 59 Mo.App. 70, applied to this case, would result in an unconscionable division, falling short of the constitutional inhibition against the taking of private property for public use without just compensation. Relying upon City of St. Louis v. Brown, 155 Mo. 545, 56 S.W. 298; State of Mo. ex rel. State Highway Commission v. Douglass, Mo.App., 344 S.W.2d 281, and Edmund Realty Co. v. Walmer Bldg. Co., 8th Cir. (1941), 123 F.2d 54, as announcing the proper rule of apportionment, the court declared that the value of the leasehold should be determined from the testimony of qualified expert witnesses as that value which a buyer under no compulsion to purchase the tenancy would pay to a seller under no compulsion to sell, taking into consideration the period of the lease yet to run, including the unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property. The bonus value, sometimes referred to as the leasehold savings or profit, is the difference between the economic rental and the contract rental. The economic rental is the actual market value of the use and occupancy. In its memorandum opinion the court observed that lessors' witnesses fixed the economic rental at $10,600. The contract rental was $9,600 per year. The court fixed the bonus value at $1,250. Multipying $1,250 by 17½ years the court arrived at the figure $21,875 as the value of the leasehold, and rendered judgment for lessee for that amount.

◼ On this appeal lessors' first point (that judgment should have been entered for lessors awarding no damages) is based upon the proposition that the lease had no value. Lessors would adopt the formula applied in the Senter and McAllister cases, supra, the theory of which is that the lessee is entitled to nothing when the annual

rent is more than 6% of the award over and above the obligations and burdens assumed by lessee. Taking the annual rental income from the entire building *in 1956* as the basis of their computations, lessors figure that the $9,600 received from lessee constituted 73% of the annual rent from the whole building; that 73% of the $190,000 award is $138,700; that 6% of $138,700 is $8,322, and since lessee paid a rental of $9,600 per year it was paying an excess rental over the true value and therefore the unexpired term of the lease was without value. We agree with the trial court that it would be unconscionable to hold that the lease was without value on the basis of that formula. Such a result would fly in the face of the testimony on both sides of the case. Not only lessee's but also lessors' expert appraisers considered this lease favorable to lessee and that it had a reasonable value in excess of the annual rental of $9,600. Lessee's vice-president so testified. None of the lessors disputed the fact that the lease had a bonus value.

■ The St. Louis Court of Appeals in Senter, applying the rule of McAllister, did not intend to lay down a rule of thumb to be generally applied in determining the rights of lessees where a lump sum has been awarded in condemnation. Edmund Realty Co. v. Walmer Bldg. Co., supra. Nor did that court in McAllister intend to lay down an inflexible and arbitrary rule applicable in all cases, for the court there said, 53 Mo.App., l. c. 86: "This method of computation is only applicable to the particular facts of this case." In Senter the proof showed there was *no* value to the leasehold interest. The lease had 80 years to run. The court referred to the uncertainty in the value of property over long periods of time; commented on the experience that property on the borderline of a business district in a large community may double or treble in value or shrink in value in equal proportion during a 99-year lease; pointed out that the most experienced real estate operators frequently differ in their views as to future values and the direction of trends of value. In such case the rule of McAllister might be the only available rule by which to test the conclusion that there was no value in the leasehold estate. It has no application in this case, in which lessors' own experts freely conceded the undisputed fact that the lease had substantial value in excess of the contract rental. The court properly found that the leasehold interest had a bonus value entitled to constitutional protection.

Lessors' next point is that the judgment was excessive for the reason that the court allowed lessee full value for the unexercised option to renew for an additional term of 10 years. They say there was no evidence to support the judgment insofar as it makes an allowance for that period; that the evidence showed that the renewal option was of little or no value and that in any event an unexercised option to renew a lease being condemned for public use constitutes no interest in property for which a lessee is entitled to compensation.

■ In our judgment the circuit court properly allowed lessee a bonus value for the full 10-year renewal period in addition to a bonus value for the unexpired 7½ years of the original term. The holder of an option to renew a lease has an interest in the land. "The right of renewal constitutes a part of the tenant's interest in the land, and forms a substantial and integral part of the agreement, * * *." 51 C.J.S. Landlord and Tenant § 56, p. 596; Taylor's Landlord and Tenant, 9th Ed., Vol. I, § 332; Penilla v. Gerstenkorn, 86 Cal.App. 668, 261 P. 488. It is a part of the estate granted, City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 108 So. 257; "an interest in or encumbrance on the property." United States v. Certain Parcels of Land, D.C., 55 F. Supp. 257, 264 [10]. The provision for the 10-year renewal period is "as much a part of the lease as any other element therein." Wright v. Logan, Mo.App., 25

S.W.2d 799, 802; Lee v. Armour Bldg. Co., Mo.App., 18 S.W.2d 102, 105. The option to renew is a right of value, entitled to constitutional protection.[1] Lessee is entitled to the value of an option for renewal in addition to the value of the unexpired term of the lease.[2]

Lessors object that lessee did not exercise its option to renew, citing cases which hold that a lessee with an unexercised option *to purchase* is not entitled to compensation upon condemnation of the leased premises. Without approving or disapproving and assuming for the purpose of the argument that those cases were correctly decided, they are not analogous. The holder of an unexercised option *to renew* a lease, having an interest in the land, is in a different position from that of the holder of an option to purchase who has *no interest in the land* before the exercise of the option.

■ Lessee having established a compensable right, the real question under this point is whether the court, in allowing the bonus value for the full 10-year renewal period, adopted a proper measure or quantum of damages. In arriving at just compensation in condemnation proceedings the damages awarded must be definite and certain; they are not to be based upon contingent, speculative and remote possibilities, but upon considerations of reasonable probability; the damages awarded should be those reasonably to be expected from the taking. Mo. Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783; City of St. Louis v. Senter Commission Co., 3 F. Supp. 308, affirmed Wabash Ry. Co. v. City of St. Louis, 64 F.2d 921; cert. denied 54 S.Ct. 88, 290 U.S. 668, 78 L.Ed. 577. Turning to the evidence, everything points to the fact that lessee would have exercised its option to renew the lease (absent condemnation) before the expiration of the 7-year period it had in which to do so. Lessee, the largest and oldest of the pawnbrokers of St. Louis (in business since 1873), was enjoying a favorable lease. Every witness interrogated on the subject testified that the lease had a value in excess of the contract rental. These estimates ran from $1,000 to $5,333 per annum. Lessee's vice-president testified "We were very pleased with the location at Sixth and Pine." The leased premises were in good condition, well adapted to lessee's business necessities. Lessee had spent more than $60,000 on improvements. A pawnbroker's business calls for a location "a bit off the most populated avenues" but close enough for easy access by walking or by streetcars. According to the evidence, people do not like to be seen making loans at a pawnshop; they prefer a "more obscure" location. Sixth and Pine, which was "on the fringe," only 1 or 2

1. Compare the situation of the tenant who holds over *after the expiration* of a written lease. His mere possession, plus his expectation to renew the lease, does not constitute a compensable interest entitled to constitutional protection, in the absence of assent by the landowner to a new tenancy. Millhouse v. Drainage Dist. No. 48 of Dunklin County, Mo.App., 304 S.W.2d 54.

2. United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729; United States v. Certain Parcels of Land, D.C., 55 F.Supp. 257; United States v. 425,031 Square Feet of Land, 3rd Cir., 187 F.2d 798; United States v. 70.39 Acres of Land, D.C., 164 F. Supp. 451; State ex rel. Morrison v. Carlson, 83 Ariz. 363, 321 P.2d 1025; Department of Public Works and Buildings v. Bohne, 415 Ill. 253, 113 N.E.2d 319; City of Ashland v. Kittle, Ky., 347 S.W. 2d 522, 524; Mayor, etc. of Baltimore v. Rice, 73 Md. 307, 21 A. 181; Cobb v. City of Boston, 109 Mass. 438; Hercey v. Board of Chosen Freeholders, 99 N.J.Eq. 525, 133 A. 872; New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J.Super. 309, 123 A.2d 25; In re Port of New York Authority (Lincoln Tunnel), 2 N.Y.2d 296, 159 N.Y.S. 2d 825, 140 N.E.2d 740; City of Oklahoma City v. Garnett, Okl., 296 P.2d 766; North Pennsylvania R. Co. v. Davis & Leeds, 26 Pa. 238; State v. Parkey, Tex.Civ.App., 295 S.W.2d 457; City of Dallas v. Riddle, Tex.Civ.App., 325 S.W. 2d 955 [9].

blocks from the major downtown shopping stores, was suited to lessee's purposes. The cost of moving militated against a move. Lessee had been at 6th and Pine for 12½ years. Lessee's vice-president referred to the great number of years it takes to "build up the business" after moving from an established location and the considerable expense of remodeling and fitting newly acquired premises for the operation of the business. Lessee spent $75,317 for fixtures and structural improvements after moving from 6th and Pine. We find that there was more than a reasonable probability—that it was practically a certainty—that lessee would have exercised its option to renew the lease before the deadline. Lessee had until February 28, 1970 to exercise the option. Its right to do so was terminated by the condemnation proceedings. Under these circumstances the nonexercise of the option is immaterial; lessee is not to be denied the benefit of its bargain for not having given notice in writing of its intention to renew the lease, where its right to give such notice (with 7 years to run) was cut off by the condemnation proceedings. We are not to set aside a judgment in a case tried upon the facts without a jury unless clearly erroneous. § 510.310, subd. 4, V.A.M.S. Under the facts of this case we cannot say that it was error for the court to adopt the method it employed to arrive at the value of the option for renewal. On the contrary we approve the judgment insofar as it ascertained the annual value of the bonus and allowed for its loss through the 10-year renewal period.

Lessors contend that to be entitled to the bonus for the renewal period lessee should have exercised its option between the time the petition in condemnation was filed and the time of the taking. We think not, for the reason that lessee had a right or interest in the land arising out of the option provision in the lease; it was not necessary to exercise the option to acquire the right. Furthermore, the exercise of the option under these circum-stances, with the building about to be demolished under pending condemnation proceedings, would have been a sham; a vain and futile exercise in opportunism; a transparent attempt to bolster the damages. State v. Parkey, Tex.Civ.App., 295 S.W.2d 457, 462 [6].

It is difficult to reconcile lessors' contention that there is no testimony in the record to support the portion of the judgment allowing lessee full value for the additional 10-year period with lessors' later statement in their brief emphasizing that the amount due lessee is "basically a question of law" (whether the leasehold was to be considered a 7½ year lease or a 17½ year lease) and the concession in their brief that "Under the law, we cannot and do not question the Court's discretion in respect to the determination of the $1250.00 per annum found by the Court to be due plaintiff. This amount was arrived at by the Court in weighing the conflicting testimony in respect thereto, and, as a trier of the facts that was the Court's prerogative, and, we are bound by it." Certainly there was ample evidence to support the court's determination of $1250 as the annual bonus value. Lessee's vice-president estimated the value of the unexpired and renewal terms at $25,000 each, or $2500 per annum for the renewal and $3333 per annum for the unexpired term. Lessee's two expert appraisers fixed the value of the bonus for the unexpired term at $35,000 and $40,000, respectively, or $4,666 to $5,333 per annum. Lessors' own expert appraisers fixed the value of the annual bonus at $1000. The fixing of the amount of the annual bonus from the testimony of the four qualified expert witnesses and that of lessee's vice-president was "preeminently the concern of the trier of the facts," New Jersey Highway Authority v. J. & F. Holding Co., supra, 123 A.2d, l. c. 29 [8], and in approving the $1250 figure we are giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses. § 510.310, subd. 4, V.A.M.S.

Lessors' next point is that the judgment is excessive for failure to reduce the judgment to present cash value.[3] Lessors' argument is that the leasehold bonus would not have been realized in one lump sum, but in a series of annual installments or accruals of $1250 over the next 7½ (we have concluded 17½) years, but for the condemnation proceedings, and that the court should not commute these future benefits and award them presently in one lump sum at their full value, but should "apply a discount factor to arrive at the present worth of the market value as a lump sum payable *in praesenti*." Sackman on "Valuation of Leasehold," proceedings of Third Annual Institute on Eminent Domain, The Southwestern Legal Foundation (1961), p. 50. The majority of the courts have ruled that the fair and reasonable market value of the balance of the demised term is the full amount of the difference between the fair rental value of the leased premises for the unexpired term and the rent reserved in the lease. 29A C.J.S. Eminent Domain § 143 b; Sackman, supra, p. 49. The principle of commuting to present worth the difference between the rent reserved and the fair rental value of the lease for the unexpired term represents the minority view. It has been recognized, Orgel on Valuation Under Eminent Domain, 2nd Ed., Vol. I, § 122, p. 529, and applied by various authorities. McAllister v. Reel, supra; Dept. of Pub. Works & Buildings v. Metropolitan Life Ins. Co., 42 Ill.App. 2d 378, 192 N.E.2d 607, 613; State v. Parkey, Tex.Civ.App., 295 S.W.2d 457 [1]; In re Real Property in Borough of Manhattan, City of New York, 19 A.D.2d 44, 241 N.Y.S.2d 44, 49 [7]. Although the Kansas City Court of Appeals in Proceedings, etc. v. National Engineering & Mfg. Co., Mo.App., 274 S.W.2d 490, did not discuss the principle of discount, it approved an award which apparently was based upon testimony of a qualified appraiser reducing a total bonus value of $16,800 to a "present" value of $14,000.

We are of the opinion that the discount factor should be applied under the particular facts of this case; that this lessee is entitled only to the capitalized value of the bonus. The principle is that of an annuity. The method is the commutation to a lump sum of the series of periodic benefits which but for the condemnation proceedings would have accrued in the future, the enjoyment of which would have been delayed and withheld until by the passage of time the future dates of accrual arrived. The discounted sum, presently to be awarded in one lump sum, with a given rate of interest compounded, will equal the amounts which would have come due annually by the expiration of time under the operation of the lease. This will not award lessors a premium or result in their unjust enrichment, as claimed. On the contrary, to award lessee *in praesenti* the total amount of all accruals of bonus to come due in the future would be to allow lessee a premium and result in its unjust enrichment. An example of the injustice of presently awarding lessee the full amount in one lump sum will suffice. Take the last year's bonus of $1250, which under the operation of the lease (absent condemnation) would not have enured to lessee's benefit until August 31, 1980. To award to lessee that particular installment in full as of March 11, 1963 would give lessee its use 17½ years in advance of the time lessee otherwise would have been entitled to it. To be fair about it that installment should be discounted to the sum which, compounded at the proper rate of interest, would equal $1250 by 1980. The evidence indicated that there is a universally accepted method of applying the principle of discount known as the Inwood table, described in detail by Laurence Sando in an article entitled "Appraisal of Leasehold Interests," beginning at page 79 of

---

3. The court specifically declined to apply a discount or short rate to the amount of lessee's loss, stating "The Court has not applied the so-called Inwood Table."

the proceedings of the Third Annual Institute on Eminent Domain, The Southwestern Legal Foundation (1961), particularly described and illustrated by example, beginning at page 85. This or some other formula shown by the evidence to be generally accepted should be applied, at the proper rate of interest, to discount to present value the bonus which would have been recovered in 17½ annual accruals in the future. The award is excessive to the extent that it exceeds this amount.

Next, lessors ask for a reduction of the award based upon an unexpired term of 7½ years, contending that the award should have been based upon an unexpired term of only 7 years, 2 months, since lessee occupied the premises for 4 months after the taking, paying the same rent to the condemning authority, to which it attorned. The court did not err in failing to take this into consideration. The tenancy was terminated on the date of the taking, and a new tenancy was created by a written lease entered into between respondent and the condemning authority. Lessors were not parties to and were not affected by this agreement. They had no further interest in the premises, and the new tenancy had no effect upon the value of the leasehold on the date of taking.

Finally, lessors claim that the court erred in refusing to allow an offset of $400, which is the "undisputed value" of a safe door removed by lessee and which it is claimed was the property of lessors under the terms of the lease. It is sufficient to say that matters of offset are affirmative defenses which should be but were not pleaded. Civil Rules 55.09, 55.10, V.A.M.R.

The judgment on the merits, for respondent and against appellants, is affirmed. The award of damages ($21,875), not having been capitalized to present worth, is excessive, and that portion of the judgment is reversed, and the cause is remanded with directions to conduct a hearing, take evidence if necessary, apply the proper discount factor, based upon the proper interest rate, and render a new judgment for respondent and against appellants, as of January 31, 1964, for the sum so calculated.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.