Charles OSBORN, Respondent/Cross–Appellant,

v.

The HOME INSURANCE COMPANY, Respondent,

and

Charlie's Warehouse Foods, Inc., John Gowan and Anita Gowan d/b/a Gowan's Foodliner, Inc., individually, and John Gowan and Tom Turner as statutory trustees of Gowan's Foodliner, Inc., Appellants/Cross–Respondents.

No. 67880.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 2, 1996.

Kent M. Bevan, Dysart, Taylor, Penner, Lay & Lewandowsky, Kansas City, Keith D. Sorrell, Spain, Merrell & Miller, Poplar Bluff, for appellant.

C.H. Parsons, Jr., Parsons, Wilson & Satterfield, Dexter, for respondent.

GARY M. GAERTNER, Judge.

Appellants/cross-respondents, John Gowan and Anita Gowan d/b/a Gowan's Foodliner, Inc., individually, and John Gowan and Tom Turner as statutory trustees of Gowan's Foodliner, Inc., appeal from the judgment of the Cape Girardeau County Circuit Court apportioning $275,000 in insurance proceeds. Respondent/cross-appellant, Charles Osborn, also appeals. We affirm.

Charles Osborn ("landlord") was the fee simple owner of a parcel of land in Butler County, Missouri, and the owner of a commercial grocery store, Charlie's Warehouse Foods, Inc., located there. On September 3, 1990, John and Anita Gowan, doing business as Gowan's Foodliner, Inc. (collectively "tenant"), purchased from landlord the inventory, equipment, business name, and goodwill of Charlie's Warehouse Foods, as well as a covenant not to compete. Also on September 3, 1990, landlord entered into a written lease agreement with tenant for the purpose of leasing the grocery store's building to tenant.

The lease was for seven years, with an option to renew all the terms for an additional five-year term. Rent was $3,200 per month for the seven-year initial term and the five-year option. Section XIII of the lease, "DAMAGE TO PREMISES BY FIRE, CASUALTY OR BY TAKING FOR PUBLIC USE," provided that in case the building was "taken for any street or other public use," or "destroyed or substantially damaged by fire or casualty, or condemned by the action of a governmental body or other public authority after the execution hereof and before the expiration of the said term," either landlord or tenant could elect to terminate the lease. Section XIV of the lease, "INSURANCE," provided in pertinent part:

> The Tenant shall insure, at his sole expense, the building on the demised premises against the risk of fire in the minimum amount of Three Hundred Thousand Dollars ($300,000.00). The Landlord shall appear as sole loss payee. . . .

Tenant purchased an insurance policy for the building from The Home Insurance Company ("insurer") and paid all premiums as due. The amount of coverage on the building was $576,000. The deductible was $1,000. The named insured was Charlie's Warehouse Foods (now owned by tenant), with landlord listed as an additional insured. The policy was in full force and effect at all times relevant to this action.

On August 28, 1993, almost exactly three years after tenant and landlord entered into the lease agreement, Charlie's Warehouse Foods was completely destroyed by fire. The building lease was terminated on that date.

Due to conflicting claims to the insurance proceeds for the building, insurer filed an interpleader action pursuant to Rule 52.07 and paid the entire amount of coverage for the building, $576,000, to the circuit clerk. The parties stipulated the only claimants were landlord and tenant. The parties further stipulated landlord was entitled to the first $300,000 of the $576,000 in proceeds, which the trial court accordingly ordered disbursed.

The dispute, then, concerned the balance— $275,000, or $276,000 minus the $1,000 de-

ductible. Landlord and tenant filed motions for summary judgment, each claiming entitlement to the entire amount. The trial court denied both motions and a bench trial was held. John Gowan testified on behalf of tenant, stating his opinion that the fair market value of the lease was $5,000 per month, or $1,800 per month more than the lease agreement's rental value. For his part, landlord testified with respect to the parties' rent negotiations: "I started out at [$3,500] and then I went down to [$3,200]." Landlord opined the fair market value for the lease was $3,200 per month.

On February 22, 1995, the trial court entered findings of fact and conclusions of law. The court found tenant had an insurable interest in the building it leased from landlord. The court further found the fair market value of the lease was $3,500 per month. The court ruled tenant was entitled to damages equal to the difference between the fair market value of the lease ($3,500) and the contract rental specified in the lease ($3,200)—$300 per month—"for the 108 months [nine years] remaining on the lease and option periods," a total of $32,400. The court ordered the $276,000 in proceeds distributed in the following manner: the $1,000 deductible returned to insurer; $32,400 paid to tenant; and $242,600 paid to landlord. Both sides appeal.

Tenant contends the trial court erred in its allocation of proceeds to landlord, claiming landlord did not prove his entitlement to any proceeds exceeding the $300,000 agreed to by the parties. Landlord responds the court properly distributed the proceeds to landlord, but claims the court erred in not reducing to present value the portion of proceeds awarded tenant.

■ Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): we affirm the trial court's judgment unless it is not supported by substantial evidence or against the overwhelming weight of the evidence, or erroneously declares or applies the law. Where the evidence is conflicting, we defer to the trial court's findings of fact. *Id.* In interpleader actions, each claimant is regarded as a plaintiff and each bears the burden of proof on his or her respective claims. *Star–Times Publishing Co. v. Buder*, 245 S.W.2d 59, 69 (Mo.1951); *Century 21 Al Burack Rltrs. v. Zigler*, 628 S.W.2d 915, 916–917 (Mo.App.E.D.1982).

■ There is no dispute tenant had an insurable interest in the building. *See G.M. Battery & Boat Co. v. L.K.N. Corp.*, 747 S.W.2d 624, 627 (Mo. banc 1988) (lessee has an insurable interest in leased premises, "if there is potential for loss [to the lessee] in the destruction of the subject property."). Where a fire insurance policy is issued jointly to both the lessor and lessee, upon the destruction of the insured property the lessor and the lessee are entitled to an interest in the insurance proceeds proportionate to each party's interest in the property. *See* Annotation, 8 A.L.R.2d 1445–1446. The dispute on appeal concerns the valuation of each party's interest in the $275,000 in insurance proceeds.

■ According to tenant, landlord failed to prove he had any interest in the proceeds above the $300,000 minimum coverage required under section XIV of the lease. We disagree. The policy provided $576,000 in coverage to both named insureds, Charlie's Warehouse Foods and landlord. Nothing in the policy limited landlord's coverage to the $300,000 minimum required by the terms of the lease. As owner and lessor of the property in question, landlord was entitled to his proportionate share of the $275,000 balance. The cases cited by tenant on this particular point are inapposite. We see no error.

■ Tenant also contests the trial court's method of valuation of its interest. In finding tenant entitled to $32,400 of the proceeds, the court employed the "bonus value" method for valuing a lessee's interest in real property, relying on *Land Clearance for Redev. v. Coen & Co.*, 773 S.W.2d 465, 471 (Mo.App.W.D.1989). *Coen* and other progeny of *Land Clearance for Redevelop. Corp. v. Doernhoefer*, 389 S.W.2d 780, 784 (Mo.1965), hold that the lessee of property taken by eminent domain is entitled to the "bonus value" of the unexpired term of his or her lease, or the amount by which the fair market rental value of the use and occupancy of the land for the remainder of the lease term

exceeds the rent specified in the lease. *Coen*, 773 S.W.2d at 471. *See also St. Louis County v. Boatmen's Trust Co.*, 857 S.W.2d 453, 456 (Mo.App.E.D.1993); *State v. Jim Lynch Toyota*, 835 S.W.2d 421, 424 (Mo.App. E.D.1992). "[W]here a condemnation award is to be apportioned between a single lessee and a single lessor, the entire award must be allocated to the lessor unless the lessee can prove the existence of a bonus value." *Coen*, 773 S.W.2d at 472. The lessee bears the burden of proving the bonus value. *St. Louis County*, 857 S.W.2d at 457.

Tenant points out that all the cases employing the bonus value method involved condemnation awards, rather than insurance proceeds. Although this is true, the underlying logic in their valuation of the lessee's leasehold interest is equally applicable here. Section XIII of the lease at issue treated loss from fire and loss from eminent domain identically: the lease could be terminated under each scenario. Whether the lease was terminated due to fire or condemnation, in both cases tenant would lose its remaining leasehold interest.

Tenant also complains the bonus value method does not allow for recovery of its loss of business opportunity, goodwill, and future profits. This argument is irrelevant. The insurance proceeds were for loss of the building, not for lost profits or business opportunities, which were either covered by other provisions of the policy or not covered at all. We note that at the time of trial, tenant had already been paid, pursuant to the policy, $1,190,000 for personal property losses and $128,000 for business interruption losses; tenant had an additional claim for business interruption losses pending as well.

■ Finally, the trial court's calculation of the lease's bonus value, and its apportionment of the proceeds, were supported by sufficient evidence. There was testimony— namely, landlord's—from which the court could find the fair market rental value of the building to be $3,500 per month, $300 per month more than the rent specified in the lease. In sum, on the facts of the immediate case, we see no error in the court's use of the bonus value method in determining the value of the lease's unexpired term to tenant. Tenant's point on appeal is denied.

■ Landlord appeals the trial court's valuation of tenant's share of the disputed proceeds, contending the court erroneously failed to reduce the value of tenant's remaining leasehold interest to present value, resulting in the unjust enrichment of tenant. According to landlord, the Missouri Supreme Court's decision in *Doernhoefer*, 389 S.W.2d at 788–789, mandates that the lump-sum award to tenant for the remaining nine years of the lease be reduced to $21,582.90, the figure offered by landlord as the present value of $32,400.

We disagree. Landlord cites us to no authority mandating the discount to present value of insurance proceeds (as opposed to condemnation awards, i.e. *Doernhoefer*). Such proceeds are paid out pursuant to contract. Tenant is entitled to its full proportionate share of the proceeds. Landlord's point on appeal is denied.

The trial court's judgment is affirmed.

RHODES RUSSELL, J., concurs.

SMITH, P.J., concurs as to appellant's appeal and dissents as to cross-appellant's appeal.