**CITY OF RIVERSIDE, Missouri, Respondent,**

v.

**PROGRESSIVE INVESTMENT CLUB OF KANSAS CITY, INC., et al., Respondent.**

**Ilios, Inc., Appellant.**

**No. WD 58696.**

Missouri Court of Appeals,
Western District.

May 29, 2001.

James G. Trimble, Parkville, for appellant.

Laurence R. Tucker, Kansas City, for respondent City of Riverside.

Donald A. Witt, Platte City, for respondent Progressive Investment Club of Kansas City.

Before ULRICH, P.J., EDWIN H. SMITH and NEWTON, JJ.

ULRICH, Presiding Judge.

In this condemnation proceeding, Ilios, Inc. appeals the judgment of the trial court denying relocation benefits and apportioning a $185,000 condemnation award between it and Progressive Investment Club of Kansas City, Inc. (Progressive). Ilios, Inc. (Ilios) owned and operated a restaurant in space leased from landlord Progressive. Ilios claims that the trial court erred in (1) refusing to set aside its order denying Ilios relocation benefits and to reopen the case for additional evidence that the property was acquired for a public purpose for which federal funds were available requiring the payment of such relocation benefits, (2) allocating the condemnation award because the court relied on hearsay evidence, and (3) reducing its share of apportionment by two months unpaid rent. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded with directions.

The City of Riverside filed a petition to condemn property known as Pic Plaza to use as a public park. The property was owned by Progressive, which leased the property to various tenants. Ilios leased part of the property to operate a restaurant. At the time Riverside acquired title to the property, Ilios had four and a half years remaining on its lease with Progressive.

During the condemnation proceeding, Ilios requested relocation assistance under section 523.205.1, RSMo 2000. Section 523.205.1 provides:

Any public agency as defined in section 523.200 which is required, as a condition to the receipt of federal funds, to give relocation assistance to any displaced person is hereby authorized and directed to give similar relocation assistance to displaced persons when the property involved is being acquired for the same public purpose through the same procedures, and is being purchased solely through expenditure of state or local funds.

§ 523.205.1, RSMo 2000. Riverside opposed Ilios's request arguing that it is not a "public agency" and that it was not acquiring the property for the "same public purpose" or through "the same procedures" as a federally funded municipal park project. The trial court entered an order denying relocation funds. Ilios then filed a motion to set aside and reconsider the court's order denying relocation bene-

fits. It asked the court to allow introduction of additional evidence that Riverside actually planned to use part of the condemned property to widen a highway bridge adjacent to the property for which federal funds were available. A hearing was held on the motion, and the trial court subsequently denied it.

The trial court also entered an order approving condemnation of the property for the use set out in the petition. In the order, the court also approved the stipulated agreement between Riverside and the defendants regarding just compensation for the property in the amount of $185,000, and Riverside paid that sum into the court on January 5, 2000. Thereafter, Ilios filed a motion for apportionment of the condemnation award between it and Progressive. Progressive filed its own motion to pay out the award. Ilios also filed a motion for new trial on the issue of relocation benefits again arguing that it had new information showing that part of the condemned property would be used for highway purposes.

Following a hearing in which Ilios and Progressive presented evidence regarding the value of Ilios's lease, the trial court entered its judgment apportioning the $185,000 condemnation award. It first ordered that unpaid real estate taxes in the amount of $9,037.15 be paid to the county. The court then awarded $7,650 less $900 for unpaid rent to Ilios and $169,212.85 to Progressive. Thereafter, the court issued checks to the county collector, Ilios, and Progressive. The next day, Ilios filed its motion to correct the judgment or in the alternative for a new trial on the issue of division of the condemnation award. A receipt of funds was filed with the court soon after. This appeal by Ilios followed.

## Jurisdiction

Riverside and Progressive (Respondents) initially contest the jurisdiction of this court over Ilios's appeal. They claim that by withdrawing its condemnation award from the court registry, Ilios is estopped from challenging any proceedings that occurred prior to the withdrawal, and, therefore, the issues in this appeal are moot.

Where the owner of condemned land withdraws an award paid into the court for the owner's benefit as damages for appropriation of his property, the owner is estopped from challenging the right of the condemnor to condemn the property or any irregularities from that part of the proceeding. *State ex rel. State Highway Comm'n v. Howald,* 315 S.W.2d 786, 788 789 (Mo.1958); *Chicago Great Western R. Co. v. Kemper,* 166 S.W. 291, 292–294, 256 Mo. 279 (Mo.1914); *Jackson County v. Hesterberg,* 519 S.W.2d 537, 543–545 (Mo. App.1975). "Such act [acceptance of the award] upon his part is a concession by him that the plaintiff is entitled to take the property under the proceedings, upon the payment of full and adequate compensation thereof." *Howald,* 315 S.W.2d at 789 (quoting *Kemper,* 166 S.W. at 294). The owner of condemned land is permitted, however, to further litigate the issue of just compensation or damages. *Howald,* 315 S.W.2d at 789; *Kemper,* 166 S.W. at 294. *But see State ex rel. State Highway Comm'n of Missouri v. Davidson,* 621 S.W.2d 126 (Mo.App. W.D.1981)(landowners' withdrawal of commissioners' award from registry of court estopped landowners from attacking the validity of the appointment of the commissioners). In this appeal, Ilios is not challenging Riverside's right to condemn the property. Instead, it is contesting the trial court's judgment regarding damages. Ilios's withdrawal of its portion of the condemnation award from the court registry, therefore, does not estop it from litigating the issue of

damages. This court has jurisdiction over this appeal.

### Standard of Review

 Review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

### Reopening the Case for Additional Evidence

In its first point on appeal, Ilios claims that the trial court erred in refusing to set aside its order denying relocation benefits and to reopen the case for additional evidence. Citing section 523.205.1, RSMo 2000, it argues that the property was acquired for a public purpose for which federal funds were available. Thus, because federal funds were available and because the property was acquired for public purpose, relocation benefits were payable. Section 523.205.1 states:

> Any public agency as defined in section 523.200 which is required, as a condition to the receipt of federal funds, to give relocation assistance to any displaced person is hereby authorized and directed to give similar relocation assistance to displaced persons when the property involved is being acquired for the same public purpose through the same procedures, and is being purchased solely through expenditure of state or local funds.

§ 523.205.1, RSMo 2000.

 The trial court has wide discretion to reopen a case for the admission of additional evidence. *Call v. Heard*, 925 S.W.2d 840, 854 (Mo. banc 1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997); *Missouri Highway &*

*Transp. Comm'n v. Rockhill Dev. Corp.*, 865 S.W.2d 765, 770 (Mo.App. W.D.1993); *Crossroads Econ. Dev. Corp. of St. Charles County, Inc. v. West*, 704 S.W.2d 302, 303 (Mo.App. E.D.1986). The trial court's decision as to whether to reopen a case will be reversed only upon a showing of abuse of discretion. *Rockhill*, 865 S.W.2d at 770. "It would be an abuse of discretion to refuse to permit the introduction of material evidence which might substantially affect the merits of the case, if such presentation would not inconvenience the court or unfairly advantage one of the parties." *Id.*

 In its motion to set aside and reconsider the court's order denying relocation benefits, Ilios alleged that part of the property being condemned was to provide a temporary construction easement for improvements on a bridge on Gateway Road. Accompanying the motion were exhibits B-1 and B-2, a bridge plan dated April 19, 1999. The trial court held a hearing on the motion, and Ilios requested the court to reopen the case to allow additional evidence on the issue. It argued that Riverside intended to utilize the property for highway purposes and that the project involved a federal grant. It claimed that relocation benefits were, therefore, available under section 523.205.1. Ilios, however, failed to specify what evidence it intended to present to support its argument regarding Riverside's use of the property other than for which the property was condemned. It did not identify any witnesses who would explain the exhibits attached to the motion or who would testify regarding the existence of a proposed bridge project or the funding for the project. Ilios did not specify what additional evidence it wished to introduce and, thus, did not demonstrate that the evidence was material or that it would substantially affect the merits of the case. The trial court, therefore, did not abuse its discre-

tion in denying Ilios's motion. Point one is denied.

### Allocation of Award

In its second point on appeal, Ilios claims that the trial court erred in allocating the condemnation award between it and Progressive. It contends that the trial court erred in relying on the testimony of Progressive's appraiser in apportioning the award because the expert's opinion as to the value of the leasehold was not based on facts sufficient to support the opinion. Specifically, Ilios argues that Progressive's expert did not make a careful inquiry into the facts concerning comparable leases. It contends that the expert did not use any rents on local restaurants for comparison, relied on an unknown source for information about comparable leases, and was unfamiliar with the dimensions and lease terms of properties he did rely on to form his opinion.

▮▮▮▮ The measure of damages for condemnation of a tenant's interest in real property is the bonus value of the unexpired term of the lease. *Osborn v. Home Ins. Co.*, 914 S.W.2d 35, 37 (Mo.App. E.D. 1996); *Land Clearance For Redevelopment Authority v. W.F. Coen & Co.*, 773 S.W.2d 465, 471 (Mo.App. W.D.1989). Where a condemnation award is to be apportioned between a single tenant and a single landowner, the entire award must be allocated to the landowner unless the tenant can prove the existence of a bonus value. *Osborn*, 914 S.W.2d at 38; *Coen*, 773 S.W.2d at 472. The tenant bears the burden of proving the bonus value. *Osborn*, 914 S.W.2d at 38. The bonus value is the difference between the economic rental, which is the fair market value of the leasehold interest, and the contract rental, which is the actual rent paid according to the terms of the lease agreement, discounted to present value. *Coen*,

773 S.W.2d at 471. The value of the leasehold is determined from the testimony of qualified expert witnesses considering the following factors:

the period of the lease yet to run, including the unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property.

*Id.* (quoting *Land Clearance for Redevelopment Corp. v. Doernhoefer*, 389 S.W.2d 780, 784 (Mo.1965)). A leasehold interest will have value under the bonus value method of valuation only where the rent to be paid under the terms of the lease is less than the market rents being paid for comparable properties at the time of the taking. *Id.*

▮▮▮▮ The admission of evidence regarding comparable properties is within the sound discretion of the trial court. *State ex rel. Missouri Highway & Transp. Comm'n v. Roth*, 687 S.W.2d 662, 666 (Mo. App. E.D.1985). Conflicting evidence of experts must be weighed by the trier of fact and considered in light of knowledge, experience, and attention given to the case. *Richard B. Curnow, M.D., Inc. v. Sloan*, 625 S.W.2d 605, 607 (Mo. banc 1981). "An expert testifying on the value of property in a condemnation proceeding may base his opinions in part upon his investigation and his inquiries concerning other sales even though such sources constitute hearsay and would ordinarily be inadmissible." *State ex rel. State Highway Comm'n v. Berkeley School Dist.*, 618 S.W.2d 195, 198 (Mo.App. E.D.1981). This exception to the hearsay rule is justified, however, on the basis that the expert will have made care-

ful inquiry into the facts upon which he bases his opinion thus providing a sufficient guarantee of trustworthiness. *Id.* Whether an expert's opinion is based upon and supported by facts in evidence sufficient to support that opinion is a question of law for the court. *Holtgrave v. Hoffman,* 716 S.W.2d 332, 335 (Mo.App. E.D. 1986).

■ In this case, the evidence revealed that Progressive's expert, Peter Burgess, was a member of the Appraisal Institute and had been a full time appraiser since 1984. Most of his business involves appraising commercial and industrial properties with forty percent of his work done in Platte County. Mr. Burgess testified that the bonus value of Ilios's lease was $6263. He stated that he arrived at this valuation opinion by utilizing local comparable leases. He explained that he researched these leases by using some of the same sources he had used in previous appraisals in the area and by talking to individuals in the same market. Mr. Burgess specifically testified about three comparable properties. The first was a property in Riverside similar to the entire Pic Plaza property where Ilios was located. Mr. Burgess explained that he had looked at the property and had spoken to the leasing agent. He described the location, condition, size, and lease price in his testimony. Mr. Burgess also based his valuation opinion on two restaurant properties in the neighboring community of Northmoor. He testified that he talked to the owner of the properties, and he again described the locations, conditions, sizes, and current lease rates of the restaurants. The evidence revealed that Mr. Burgess made careful inquiry into the facts concerning the comparable leases upon which he based his valuation opinion. Mr. Burgess's testimony was, therefore, admissible and constituted substantial evidence to support the trial court's decision regarding apportionment of the condemnation award. The second point is denied.

## Reduction of Ilios's Share of Apportionment

■ In its last point on appeal, Ilios claims that the trial court misapplied the law in reducing its share of apportionment by two months unpaid rent. At trial in March 2000, George Englezos, the owner of Ilios, testified that he had not paid the February and March rent to Progressive. In its judgment, the trial court apportioned $7,650 of the $185,000 condemnation award to Ilios but subtracted $900 for the unpaid rent. Ilios contends that Progressive's ownership of the property terminated upon Riverside's payment of the condemnation award into the trial court on January 5, 2000, and, therefore, its right to receive rent was also terminated by operation of law. Ilios's contention is correct.

■ The date of the taking or condemnation is the date when the condemnor pays the condemnation award into the registry of the court. *City of Cottleville v. American Topsoil, Inc.,* 998 S.W.2d 114, 118 (Mo.App. E.D.1999). On that date, the condemnor obtains title to and possession of the property. *Id.* All rights of private property in the parcel are divested from the landowner. *Bi–State Dev. Agency of Missouri–Illinois Metro. Dist. v. Nikodem,* 859 S.W.2d 775, 780 (Mo.App. E.D. 1993); *Land Clearance for Redevelopment Authority v. Ridge,* 781 S.W.2d 104, 107 (Mo.App. W.D.1989). Additionally, a lease of the property is terminated by operation of law upon condemnation of the entire property, and any further obligation of the tenant to pay rent is extinguished. *Id.*

■ In this case, the condemnor, Riverside, paid the condemnation award into the registry of the trial court on January 5, 2000. On that day, Riverside obtained title to and right to possession of the prop-

erty. Progressive was divested of all rights it had in the property. The lease between it and Ilios was terminated, and Ilios's obligation to pay rent to Progressive was extinguished. The trial court, therefore, misapplied the law in reducing Ilios's share of the condemnation award by unpaid rent after the date of condemnation for February and March 2000. Thus, that part of the judgment reducing Ilios's apportionment of the condemnation award by $900 is reversed.[1]

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court with directions that it amend its judgment to conform with this opinion.

EDWIN H. SMITH and NEWTON, JJ., concur.

---

1. In its last sentence in the argument section of this point, Ilios claims that it should also have been entitled to a refund of an additional $350 for the last month's rent that was paid at the start of the lease. This issue, however, was not raised in the Point Relied On. It is, therefore, not preserved for appeal. Rule 84.04(d); *Banks v. Village Enterprises, Inc.*, 32 S.W.3d 780, 793 (Mo.App. W.D.2000).